contract. Upon that subject it was said in the case already quoted from:

"I entertain no doubt that, when the work has been done, or the articles have been furnished, a recovery may be based upon quantum meruit or quantum valebant; but when a contract is of an executory character, and requires performance over a future period of time, as here, and it is silent as to the price which is to be paid to the plaintiff during its term, I do not think that it possesses binding force."

The defendants suggest other defects in the contract, which, as it is claimed, are equally fatal. These it is unnecessary to consider, as one fatal defect is quite sufficient to sustain the judgment appealed from.

Judgment affirmed, with costs, with leave to plaintiff to amend within 20 days, upon payment of costs in this court and in the court below. All concur.

---

STATEN ISLAND RAPID TRANSIT RY. CO. v. MARSHALL.

(Supreme Court, Appellate Division, First Department. February 4, 1910.)

1. CARRIERS (§ 100*)—DEMURRAGE RULES—CONSTRUCTION.

In an action by a carrier for demurrage charges under a rule of the carrier the court will not give the rule a broader construction than its language indicates, unless the reason of the thing and the surrounding circumstances require it to do so.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–429; Dec. Dig. § 100.*]

2. CARRIERS (§ 100*)—DEMURRAGE RULES—CONSTRUCTION.

Under a demurrage rule of a carrier, stipulating that demurrage would be charged at a designated place for detention of coal cars held for transshipment, the date of arrival of cars at a place 12 miles distant from the place specified, in another state and upon the lines of another railway, was not the proper date to be taken in computing the total detention of the cars where the cars were held solely for the convenience of the carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–429; Dec. Dig. § 100.*]

Appeal from Appellate Term.

Action by the Staten Island Rapid Transit Railway Company against Wilbur A. Marshall. From a determination and order of the Appellate Term (117 N. Y. Supp. 1034), reversing a judgment of the Municipal Court, plaintiff appeals. Affirmed, and judgment absolute ordered for defendant.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, McLAUGHLIN, and DOWLING, JJ.

Carl A. DeGersdorff, for appellant.
Grant C. Fox, for respondent.

SCOTT, J. Appeal from a determination of the Appellate Term (117 N. Y. Supp. 1034), reversing a judgment in favor of plaintiff, rendered in the Municipal Court. The controversy relates to the

proper construction to be given to certain "demurrage rules" adopted by the plaintiff and duly filed as provided by law. It is conceded that the reasonableness of the rules cannot be called in question in this action; their construction and application alone being involved.

The defendant is engaged in the coal business, and receives, as consignee, considerable quantities of coal in car loads, delivered at St. George, Staten Island. The plaintiff is a terminal railroad, so far as concerns its freight business, and handles and delivers freight originating on the lines of the Baltimore & Ohio Railroad Company for delivery in the harbor of New York. Such freight includes large shipments of coal. The Baltimore & Ohio Railroad terminates at Philadelphia, where its freight is transferred to and passes over the tracks of the Central Railroad of New Jersey to Cranford, in the state of New Jersey. At Cranford the freight cars are delivered to the Baltimore & New York Railway, and transported over its tracks to the Arthur Kill Bridge, whence they are carried over the tracks of plaintiff to St. George, Staten Island, the point of delivery. Plaintiff's line extends only from Arthur Kill Bridge to St. George, where it has delivery piers, including two coal piers, and a large storage yard, with capacity for about 1,000 cars, and another storage yard at Arlington, presumably on Staten Island, with capacity for about 800 cars. The demurrage for which this action is brought is for cars detained at Cranford, N. J., about 12 miles from St. George, the point of unloading.

It appears that cars detained at Cranford can be delivered at St. George for unloading, under favorable circumstances, in about an hour and a half after notice to so deliver them has been received. The evidence does not make it at all clear why the plaintiff should, in any case, be entitled to charge demurrage upon cars detained at Cranford, which is not on its line at all, but is the junction point of two other roads. For the purposes of this appeal, however, we may assume that it holds some lease or other contract which justifies it in treating the storage yard at Cranford as one of its own storage yards. Assuming that this is so, we come to the consideration of the demurrage rules under which the present claim is made. Those rules, so far as relevant here, read as follows:

"Demurrage Rules Applying to Bituminous Coal and Coke Consigned to St. George, S. I., N. Y., Coal Piers for Transshipment.

"On and after April 1, 1907, demurrage will be charged under the following rules at St. George, Staten Island, N. Y., for detention to cars containing bituminous coal and coke held for transshipment:

"Rule 1. A charge of $1 per car per day shall be made after the car has been detained twelve (12) days, detention to be computed as per rule 2. * * *

"Rule 2. The date of arrival of the car shall be subtracted from the date unloaded. The difference between these dates will constitute the total detention to the car."

The question is whether, under this rule, the date of arrival at Cranford, N. J., is the proper date of arrival to be taken in computing the total detention of the car. The language of the rule certainly affords no support for plaintiff's claim; and, since the rule is one of the plaintiff's own making, we are not justified in giving to it a broader construction than its language indicates, unless the reason of the thing

and the surrounding circumstances require us to do so. The rule provides that demurrage will be charged at St. George, Staten Island, for detention. This may not be so narrowly construed as to mean that demurrage will begin to run only after arrival at the discharging piers, but will be satisfied by treating the arrival at the storage yards at St. George as the date from which the detention is to be computed. Hite v. Cen. R. R. of New Jersey (C. C. A.) 171 Fed. 370. Perhaps even the yard at Arlington may be so nearly contiguous to St. George as to fall within the terms of the rule, although there is no evidence in this case warranting such a finding. But by no reasonable and permissible construction of the rule can it be said that it covers cars detained at a yard 12 miles away, in another state, and upon the lines of another railway. The cars are held at Cranford, not by the order of the consignee, but solely for the convenience of the plaintiff, because its business has outgrown its facilities at its terminal point.

We are not concerned now with the question whether or not plaintiff might have made or might make rules charging demurrage for detention at Cranford. The only question is whether it has done so. This question must, we think, be answered in the negative.

It follows that the determination of the Appellate Term must be affirmed, and judgment absolute ordered in favor of defendant against plaintiff upon the stipulation, with costs in all the courts. All concur.