It follows that the order appealed from, granting the injunction, must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, and the appeal from the order denying the motion to resettle dismissed. All concur.

---

## PENNSYLVANIA R. CO. v. MARSHALL.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

CARRIERS (§ 100*)—DEMURRAGE RULES—CONSTRUCTION—"TERMINAL."

 A carrier adopted demurrage rules for coal cars at a terminal at which it maintained two yards for cars until called for. The yards were about four miles apart, and one yard was a mile and a half from dumping piers. The average time to take a car out of the yards and place it on the piers to unload was from 30 minutes to an hour. Both yards were used as the terminal point, and cars placed in either yard could be released when ordered by the shipper, and there was no evidence that, if the cars had been brought to the yard nearest to the dumping piers instead of to the other yard, the detention of the cars would have been less than it was. *Held* to justify a finding that both yards were a part of the "terminal," within the demurrage rules.

 [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*]

Appeal from Trial Term, New York County.

Action by the Pennsylvania Railroad Company against Wilbur A. Marshall. From a judgment entered on the verdict of the jury for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, and MILLER, JJ.

Grant C. Fox, for appellant.
Morton L. Fearey, for respondent.

INGRAHAM, P. J. The action was brought to recover demurrage charges for detention of cars. The defendant is in the coal business in the city of New York, and coal was shipped over the plaintiff's railroad, assigned to the defendant at South Amboy, N. J. There was a rule covering demurrage by which, after April 1, 1907, demurrage would be charged "under the following rules at South Amboy, N. J., Harsimus Cove, N. J., Greenwich (Philadelphia), Pa., and Baltimore, Md., for detention to cars containing bituminous coal and coke held for transshipment." By rule 2 the date of the arrival of the car "shall be subtracted from the date unloaded, the difference between these dates will constitute the total detention to the car," Sundays and holidays to be excluded; also five days free time allowed for each car, and, after making the deductions provided for, the remainder, if any, would be the number of days for which the consignee would be charged. The bills for the number of days to be charged for were to be computed at the rate of $1 per day, were to be settled monthly, and were to include only the cars unloaded that month.

There was submitted on the trial a stipulation as to the time the cars for which demurrage is charged arrived at Old Bridge yard, and at the South Amboy yard; and within two days after the arrival of each of these cars the defendant received from the plaintiff notice of such arrival. It was also admitted that the total net detention after all deductions on all cars computed from the date of their arrival at the Old Bridge yard was 992 days, and computed from the date of arrival at the South Amboy yard was 445 days. The notice to the defendant that was given is dated at South Amboy, and is as follows: "The following cars arrived during the 24 hours ending 7 o'clock a. m. for your account"—giving the car numbers and other information to identify it. The question presented is whether the plaintiff was entitled to charge demurrage from the time these cars actually arrived at South Amboy yard or from the time that they arrived at the Old Bridge yard. The plaintiff's terminal at South Amboy consisted of two yards, respectively known as the "South Amboy yard" and the "Old Bridge yard." As coal cars came in on the trains, they were switched into the Old Bridge yard and left there by the trainmen, and the arrival of the cars reported to the office of the plaintiffs by telephone. The clerk in the office then sends out the notices to the consignees. There was a day and a night force, and the notices were sent at once as soon as the news of the arrival of the cars was received. This Old Bridge yard, the South Amboy yard, and piers are all a part of the terminal of the railroad company for the delivery of this coal. The cars which were detained at the Old Bridge yard were cars which were consigned to the terminal point at South Amboy. The Old Bridge yard was about four miles distant from the South Amboy yard, and the South Amboy yard was a mile and a half from the dumping piers. The average time to take a car out of the yards and place it on piers to unload was from 30 minutes to an hour. It takes cars about 30 minutes longer to be gotten from the Old Bridge yard than from the South Amboy yard. There was room for about 1,000 cars in the South Amboy yard and 1,200 cars in the Old Bridge yard. There were about 500 coal cars a day handled at these yards. The plaintiff was in the habit of keeping at the South Amboy yard the cars that it had received word would be needed for that day, or the following day, and as room was made by the loading of their cars other cars would be brought down from the Old Bridge yard. There is a passenger station at South Amboy, and also at Old Bridge; but these stations had nothing to do with the yards or with the storage or unloading of cars.

Upon these facts, about which there was no dispute, counsel for the defendant asked the court to direct a verdict for plaintiff for $546.90, on the ground that the plaintiff could not recover for the detention of cars while they were at the Old Bridge yard. The plaintiff claimed that there was a question for the jury as to whether the Old Bridge yard was in effect South Amboy within the meaning of this rule. The court then said that he would leave the question to the jury as to whether these yards were both at South Amboy, and, as stated by the court:

"Was this place or yard where the cars were stored, which you have referred to as the Old Bridge or G. Y. yard, so contiguous to South Amboy that storage of cars there amounted to storage of cars in South Amboy yard?"

The defendant's counsel excepted to the submission of that question to the jury. Upon that submission the jury found for the plaintiff the amount claimed by it, thereby finding that a car at the Old Bridge yard was detained at South Amboy. There was no evidence or suggestion in the record that if these cars had been brought to the South Amboy yard proper, and stored there, instead of at the Old Bridge yard, the detention would have been less than it was.

The defendant relies upon the case of Staten Island Rapid Transit Railway Co. v. Marshall, 136 App. Div. 571, 121 N. Y. Supp. 82. In that case the question depended upon demurrage at St. George, Staten Island. The cars were brought by the Central Railroad of New Jersey to Cranford. At Cranford the cars were delivered to the Baltimore & New York Railway Company and transported over its tracks to the Arthur Kill bridge, whence they were carried over the tracks of the plaintiff to St. George, Staten Island, the point of delivery. The plaintiff's line extends only from Arthur Kill bridge to St. George. It was held that the plaintiff could not charge demurrage on cars that were detained at Cranford which were not on its lines at all, but was the junction point of two other roads. The rules in that case provided that demurrage would be charged at St. George, Staten Island, coal piers, $1 per car per day after the car had been detained twelve days, and the date of arrival of the car should be subtracted from the date unloaded; and we held there that the date of arrival at St. George was to be the date from which the detention was to be computed, and not from Cranford, N. J.

The distinction between the two cases is that in the Staten Island Case, until the cars arrived at St. George, or, at any rate, were delivered to the plaintiff's road, there was no detention at St. George. In this case the whole route was under the control of the plaintiff. It sent its cars forward, and stored them at either the South Amboy yard or the Old Bridge yard, which were both under the control of the plaintiff, and, so far as appears, the cars could have been released at any time during this period, when ordered by the defendant, within about an hour and a half.

I am inclined to think that the court should have directed a verdict for the plaintiff. The cars were not detained at the Old Bridge yard, as distinct from the South Amboy yard; but cars for South Amboy were kept at both yards until called for by the consignees. The terminus of the road were the two yards. They were both used as the terminal point of the plaintiff's railroad, and cars were stored at both yards awaiting orders of the consignee. It may therefore fairly be said that the words "South Amboy" in the rule included a car stored at either of these yards. The jury having found a verdict for the plaintiff, if there was a question, it was settled by their verdict.

The judgment and order should therefore be affirmed, with costs. All concur.