(No. 19123.—

THE CHICAGO RAILWAYS COMPANY *et al.* Appellants, *vs.*
THE COMMERCE COMMISSION *ex rel.* The Chicago Motor Coach Company, Appellee.

*Opinion filed June 19, 1929—Rehearing denied October 4, 1929.*

JOHN R. GUILLIAMS, JAMES M. SHEEAN, and HARRY P. WEBER, for appellants.

RYAN, CONDON & LIVINGSTON, (JAMES G. CONDON, and JOHN J. SHARON, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree of the superior court of Cook county which confirmed orders of the Illinois Commerce Commission made on June 22 and August 9, 1927, on the petition of the Chicago Motor Coach Company concerning the operation by that company of motor busses for the transportation of passengers over certain streets in the city of Chicago. The appellants are the Chicago Railways Company, the Chicago City Railway Company, the Calumet and South Chicago Railway Company and the Southern Street Railway Company, operators of street railways in some of the streets over which the Chicago Motor Coach Company operates its busses, which answered and opposed the petition.

The Chicago Motor Coach Company has for several years operated motor busses upon certain streets and boulevards in the city of Chicago and its park districts under a

certificate of convenience and necessity issued by the State Public Utilities Commission to the Chicago Motor Bus Company on January 15, 1917, and other certificates issued by the Public Utilities Commission or the Commerce Commission, its successor, at various times to the Chicago Motor Bus Company or the Chicago Motor Coach Company, the original name of the corporation having been changed to the Chicago Motor Coach Company. This company on May 7, 1925, filed a petition with the Commerce Commission referring to the certificates which it had received from the commission and its operation under them for several years, and particularly to the certificate of January 15, 1917, which it stated authorized the petitioner to operate motor coaches for hire over certain streets on the north side of Chicago with a view to serving the convenience and necessity of certain portions of the territory of the north side, among others that lying west of and contiguous to the west boundary of Lincoln Park, and that between North avenue and the loop district, and between North Clark street on the west and Michigan avenue and Lake Shore drive on the east. The petition stated that in serving these territories under the certificate of January 15, 1917, the usual operation of motor coaches would be as follows: "From a point, to-wit, Lakeview avenue and Diversey boulevard, a portion of the coaches which would be operated by your petitioner, the Chicago Motor Coach Company, on Sheridan road, would proceed south on Lakeview avenue to Fullerton parkway; thence east on Fullerton parkway to a point known as Lincoln Park West; thence south on Lincoln Park West to the intersection of Lincoln Park West and North Clark street; thence southeast and south on North Clark street to its intersection with West Schiller street; thence east on West Schiller street to its intersection with North State street; thence south on North State street to a point where Rush street meets South State street; thence southeasterly and south on Rush street to

East Ohio street; thence east on East Ohio street to North Michigan avenue; thence south on North Michigan avenue to the down-town business district. The north-bound operation of these coaches would be in converse order."

The petition stated that the city, with the consent of the commissioners of Lincoln Park, had commenced the work of widening, grading, paving and otherwise improving the east side of North Clark street from North avenue north to a point 300 feet north of Center street and in the east line of Lincoln Park West, and intended to proceed with such work without delay; that the petitioner intended to file with the commission, within thirty days, an application for a certificate of convenience and necessity to operate motor coaches in both directions over certain streets in the territory mentioned, over which the petitioner proposed to establish permanent routes in lieu of the operation just described and quoted as the usual operation of motor coaches from the north side territory west of Lincoln Park, and that south of North avenue and between Lake Shore drive and Michigan avenue on the east and North Clark street on the west, to the loop, the proposed permanent route being as follows: "Motor coaches operated by your petitioner south-bound on Sheridan road and Lakeview avenue and east-bound on Diversey parkway will proceed from a point, to-wit, the intersection of Lakeview avenue and Diversey parkway, south on Lakeview avenue to its intersection with Fullerton parkway; thence east on said Fullerton parkway to the intersection of Fullerton parkway and Lincoln Park West; thence south on Lincoln Park West to its intersection with North Clark street; thence southeast on North Clark street to the intersection of North Clark street and North avenue; thence east on North avenue to the intersection of North avenue and Dearborn parkway; thence south on Dearborn parkway and North Dearborn street to the intersection of North Dearborn street and West Ohio street; thence east on West and East Ohio street

to either North State street or Michigan avenue; thence south-bound on one of these thoroughfares into the loop." The petition then represented that because of changed conditions in the vicinity it would be undesirable to operate the busses on the first route mentioned, and that pending the hearing by the commission of the application for a certificate of convenience and necessity to operate motor coaches on the streets described over which the petitioner proposed the permanent route should be established, the petitioner desired the commission to make an order authorizing the petitioner to re-route the operation of the busses upon the streets first described as the usual operation of motor coaches from the north side territory west of Lincoln Park and from the territory south of North avenue between Lake Shore drive and Michigan avenue on the east and North Clark street on the west, as follows:

"*South-bound*—The coaches operated by your petitioner over the route described in section 3 of this application shall be operated from the intersection of Lakeview avenue and Diversey boulevard south on Lakeview avenue to the intersection of Lakeview avenue and Fullerton parkway; thence east on Fullerton parkway to the intersection of Fullerton parkway and Lincoln Park West; thence south on Lincoln Park West to the intersection of Lincoln Park West and North Clark street; thence southeast and south on North Clark street to the intersection of North Clark street and West Schiller street; thence east on West Schiller street to the intersection of West Schiller street and North Dearborn street; thence south on North Dearborn street to the intersection of North Dearborn street and West Delaware place; thence east on West and East Delaware place to the intersection of East Delaware place and Rush street; thence southeast and south on Rush street to the intersection of Rush street and East Ohio street; thence east on East Ohio street to the intersection of East Ohio street and Michigan avenue; thence south on Michigan avenue into the loop.

"*North-bound*—The coaches operated by your petitioner, Chicago Motor Coach Company, on the route described in section 3, shall be operated north-bound from the loop on Michigan avenue to East Ohio street; thence west on East Ohio street to the intersection of East Ohio street and Rush street; thence north and northwest on Rush street to the intersection of Rush street and East Delaware place; thence west on East and West Delaware place to the intersection of West Delaware place and North Dearborn street; thence north on North Dearborn street and Dearborn parkway, crossing North avenue and continuing north through Lincoln Park on Stockton drive to the point where Stockton drive meets Lincoln Park West; thence north on Lincoln Park West to the intersection of Lincoln Park West and Fullerton parkway; thence west on Fullerton parkway to the intersection of Fullerton parkway and Lakeview avenue; thence north on Lakeview avenue to the intersection of Lakeview avenue and Diversey parkway, from which point the coaches shall be operated west on Diversey parkway and north on Sheridan road in the same manner as under the present routing."

On May 14, 1925, the commission, without making any certificate of convenience and necessity but reciting a hearing on May 13 at which the petitioner was represented by counsel, made an order that the application of the petitioner should be granted and that it should conduct a portion of its operation of routes No. 34 and No. 51 in the manner described in the petition, and that this order should be in force only until such time as the widening or improving of North Clark street should be completed and the commission should have heard and disposed of the application for a permanent routing, which the petitioner proposed to file within thirty days and which the commission directed the petitioner to file within thirty days from May 6, 1925. The commission having denied a petition for a rehearing, an ap-

peal was taken to the superior court, which on November 6, 1925, set aside the order denying a rehearing and remanded the cause to the commission, with directions to set the cause for rehearing and to hold such rehearing as promptly as possible and before proceeding with the hearing on the application of the coach company for a certificate of convenience and necessity for the permanent operation of the busses.

On May 25, 1925, the coach company filed its petition with the Commerce Commission, representing that the petitioner had determined that the public convenience and necessity required that the operations referred to in the order of May 14 should be carried on permanently in the manner stated in the petition which described the route which the busses should follow, over streets named, from Lakeview avenue and Diversey boulevard to State and Monroe streets, thence west on Monroe street to Dearborn street, thence north on Dearborn and other streets named to the starting point. The petition further represented that the petitioner was ready, able and willing at all times to institute the operation of such motor coach transportation service as the public necessity and convenience required, and prayed the commission to issue to it a proper certificate of convenience and necessity to enable it to operate its motor coaches in accordance with its plan of re-routing. A second amended application was filed on June 23, 1925, and a third on October 14. After the remandment by the superior court the commission consolidated the petition for the temporary order with that for the permanent order of re-routing, and on June 22, 1927, made the first of the orders included in this appeal. The commission found:

"2. That public convenience and necessity require that the routing of certain of the operations of the Chicago Motor Coach Company in the city of Chicago as prayed for in the petition as amended and filed herein, and / or as shown by the proof adduced in this case, be authorized, and

that in so far as the proposed routing involves the use of thoroughfares for which the Chicago Motor Coach Company does not possess any certificate of convenience and necessity from this commission, the same should be granted.

"3. That the Chicago Surface Lines, due to the physical conditions at certain street intersections, as, for example, the intersection of North Clark street and Center street, which may be designated as 'traffic throats' or 'control points,' and which are now utilized to the limits of their capacity, are not in a position to increase their present operations, and are powerless, either by voluntary action or under the order of the commission, to furnish additional transportation service which the public convenience and necessity of the territory concerned herein requires.

"4. That the Chicago Motor Coach Company has adequate financial means to install and conduct the proposed operation and its executives and operatives have heretofore exhibited such ability as to insure the success of the same, and that the petitioner has adequate financial resources to pay any damages resulting from any and all accidents due to the negligent use or operation of the coaches which it operates.

"5. That the Chicago Motor Coach Company has heretofore substantially exercised the authority granted to its predecessor, the Chicago Motor Bus Company, by the commission's order of January 15, 1917, and this commission expressly finds that such order is hereby confirmed in its entirety as of the present date."

The commission therefore ordered that the petitioner should thereafter operate its routes 34, 44 and 56 in the manner prescribed in the order, describing the respective routes to be followed over streets which were named. The order then continued as follows:

"It is further ordered that in operating its routes 44 and 56 as above provided, said petitioner shall file with this commission its election in writing whether to operate its

busses upon West Madison street or upon West Monroe street between State street and Dearborn street. This commission, however, reserves the right to order petitioner at any time to operate its busses upon the street other than the one so elected, if subsequently, in the light of street or traffic conditions, it deems such change advisable.

"It is further ordered that the authority granted by this commission to the Chicago Motor Bus Company (now the Chicago Motor Coach Company) by its order of January 15, 1917, to operate its busses on Lakeview avenue and Fullerton parkway be not canceled by the issuance of a certificate of convenience and necessity authorizing the Chicago Motor Coach Company to operate its motor coaches over Stockton drive between Fullerton parkway and a point intermediate between Fullerton parkway and Diversey parkway, where there is a driveway connecting said Stockton drive and Lakeview avenue, and over said connecting driveway, but that such authority be inoperative in regard to the aforesaid thoroughfares throughout such time as this commission orders the petitioner herein to operate its busses on Stockton drive between Fullerton parkway and said connecting driveway between Stockton drive and Lakeview avenue and upon such connecting driveway.

"It is further ordered that the authority granted by this commission to the Chicago Motor Bus Company (now the Chicago Motor Coach Company) by its order of January 15, 1917, to operate its motor busses on North avenue, North State parkway, Schiller street and Rush street be not canceled by this order, but that such authority on these thoroughfares be inoperative throughout such time as this commission orders the petitioner herein to operate its motor coaches in accordance with the operations designated above.

"It is further ordered that the Chicago Motor Coach Company be and the same is hereby granted a certificate of convenience for motor bus operation for the transportation of passengers over the following streets, highways, road-

ways, boulevards and thoroughfares to enable it to operate the proposed new routing upon such thoroughfares for which the company at present possesses no certificate of convenience and necessity, such highways, streets, roadways, boulevards and thoroughfares being as follows: [Describing them.]

"It is further ordered that the order entered by the predecessor of this commission, the State Public Utilities Commission of Illinois, on January 15, 1917, in case No. 2190, authorizing the Chicago Motor Bus Company (now the Chicago Motor Coach Company) to operate busses over certain streets on the north side of the city of Chicago, be and the same is hereby confirmed in each and every particular as of the date of the entry of this present order.

"It is further ordered that the commission retains jurisdiction of the subject matter and of the parties hereto for the purpose of issuing any further order or orders as the commission may deem necessary."

The street railway companies filed a petition for rehearing, which was argued orally on July 14, 26 and 28. The record of the proceedings of the commission shows that pursuant to adjournment the commission met in regular session on July 29, 1927, with six of the seven commissioners present, and continues:

"2190. Petition for rehearing failed to pass. Submitted to the commission. Petition for rehearing by Chicago Surface Lines to the order entered on June 22, 1927, granting to the Chicago Motor Coach Company a re-routing of its motor coaches on the north side of the city of Chicago. Petition failed to pass, the commissioners Jackson, Kuhn and Smith voting aye, commissioners Moynihan and Trovillion voting nay, commissioner Johnson not voting."

On July 30 notice was given that the petition for rehearing was not approved. On August 9 the commission, without notice, amended the second finding of the order

of June 22 so that it should read as follows: "That public convenience and necessity require the operation of motor coaches over, upon and along routes Nos. 34, 44 and 56, hereinafter set forth, and that in so far as the routing hereinafter provided for in this order involves the use of thoroughfares for which the Chicago Motor Coach Company does not at present possess any certificate of convenience and necessity from this commission, the same should be granted as hereinafter ordered." The street railway companies filed a petition for a rehearing on this order but their petition was denied, and they appealed to the superior court from the orders of June 22, July 29 and August 9.

The appellants contend that the commission made no sufficient finding of facts upon which its order was based; that there was no substantial evidence on which to base a finding of public convenience and necessity and the order is against the manifest weight of the evidence; that the order of January 15, 1917, granted authority to the Chicago Motor Bus Company to operate motor busses over two distinct routes, as to one of which the authority was never exercised but became void at the end of two years, and the commission had no power to revive and confirm its order of January 15, 1917, unless based upon a finding of present public convenience and necessity; that the action of the commission on July 29, 1927, was in legal effect the granting of a rehearing, and that the order of August 9, 1927, purporting to amend the order of June 22, 1927, was void.

Section 65 of the Commerce Commission act requires the commission to make and enter findings concerning the subject matter of facts inquired into and enter its order based thereon. Such findings must be specific enough to enable the court to review intelligently the decision of the commission and ascertain if the facts on which the commission has based its order afford a reasonable basis for it. If they do, the facts found may be re-examined in con-

nection with the evidence to determine if they are substantially supported by the evidence, but the court will not enter upon an independent investigation of the evidence to develop new facts not found by the commission to sustain its order. *Atchison, Topeka and Santa Fe Railroad Co.* v. *Commerce Com.* 335 Ill. 624.

The only finding of public convenience and necessity for the operation of motor busses is contained in the second of the findings of the commission, which finds that "public convenience and necessity require that the routing of certain of the operations of the Chicago Motor Coach Company in the city of Chicago as prayed for in the petition as amended and filed herein, and / or as shown by the proof adduced in this case, be authorized, and that in so far as the proposed routing involves the use of thoroughfares for which the Chicago Motor Coach Company does not possess any certificate of convenience and necessity from this commission, the same should be granted." This was not a finding of fact on which any order granting a certificate of convenience and necessity could be based. It was simply the conclusion drawn from all the evidence that the certificate should be granted, without any finding of fact from which the conclusion can be reached. Even if this paragraph of the commission's decision should be regarded as a finding of fact, it is not definite enough to justify any order based thereon. It specifies no operations to which it applies but refers to certain of the operations of the coach company "as prayed for in the petition as amended and filed herein, and / or as shown by the proof adduced in this case." The petition as amended and filed describes routes 34, 44-plan A, 44-plan B, 56-plan A, and 56-plan B, and represents that the coach company has applied to the commissioners of Lincoln Park for permission to operate motor coaches over that part of Stockton drive concerned in route 44-plan B and route 56-plan B, and desires, in case the park commissioners give such permission, that the

Commerce Commission will authorize the company to oper-
ate route 44-plan B and route 56-plan B instead of route
44-plan A and route 44-plan B for such time as the permis-
sion of the park commissioners shall be in force; and it
further desires that such authority as the Commerce Com-
mission may grant for an operation on Lakeview avenue
and Diversey parkway under plan A be not canceled by
plan B becoming effective, but that such authority shall
be inoperative in regard to Lakeview avenue and Fullerton
parkway throughout such time as the permission of the
commissioners of Lincoln Park in regard to Stockton drive
shall remain in force. The finding that public convenience
and necessity required the routing of certain of the opera-
tions as prayed for in the petition to be authorized, refers
only to one or more of the operations prayed for and is
therefore wholly indefinite, and it is also indefinite because
the prayer of the petition is in the alternative and the find-
ing is not in favor of either alternative. The finding that
public convenience and necessity required certain of the
operations "as shown by the proof adduced in this case" is
not a finding of public convenience and necessity in favor
of any route and not a finding of any fact which could be
the basis of an order. It was a mere reference to the evi-
dence without any finding of facts, which the statute re-
quires as the basis for an order. A valid order of the com-
mission, under the act, must contain a finding of fact after
hearing and investigation, upon which the order is founded,
and unless there is such finding in the record the order is
void. This was the conclusion which the Supreme Court
of the United States reached in *Wichita Railroad and Light
Co.* v. *Public Utilities Com.* 260 U. S. 48, a case involving
a construction of the Public Utility law of Kansas, a stat-
ute which, as our statute does, expressly made the power
of the commission to fix new rates in lieu of existing rates
dependent on the condition that after full hearing and in-
vestigation the commission shall find existing rates to be

unjust, unreasonable, unjustly discriminatory or unduly preferential. It was said that "this conclusion accords with the construction put upon similar statutes in other States. (*State Public Utilities Com. ex rel. Springfield* v. *Springfield Gas and Electric Co.* 291 Ill. 209; *State Public Utilities Com.* v. *Baltimore and Ohio Southwestern Railroad Co.* 281 id. 405.) Moreover, it accords with general principles of constitutional government. The maxim that a legislature may not delegate legislative power has some qualifications, as in the creation of municipalities, and also in the creation of administrative boards to apply to the myriad details of rate schedules the regulatory police power of the State. The latter qualification is made necessary in order that the legislative power may be effectively exercised. In creating such an administrative agency, the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith, to give validity to its action. When, therefore, such an administrative agency is required, as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking the order is ineffective." It was also held that the lack of an express finding may not be supplied by implication and by reference to the averments of the petition invoking the action of the commission, but the court rested its decision on the principle that an express finding of unreasonableness by the commission was indispensable under the statutes of the State of Kansas.

The question before the commission was whether public convenience and necessity required the operation of motor busses over the routes described in the coach company's petition, and an express finding of fact showing that public convenience and necessity required the operation of

motor busses along certain routes and upon certain streets or highways was a condition precedent to the jurisdiction of the commission to grant a certificate of public convenience and necessity for the operation of motor busses along such routes and over such streets and highways. The order of the commission does not contain. any such finding of facts, and it is therefore void.

The application was for a certificate for several routes, some of which were alternative. The finding was that public convenience and necessity required the operation of certain of these routes without specifying any one, and the order purported to grant authority for the operation of all the routes. The commission on August 9 entered an order which purported to amend the order of June 22 to read as follows: "2. That public convenience and necessity require the operation of motor coaches over, upon and along routes Nos. 34, 44 and 56, hereinafter set forth, and that in so far as the routing hereinafter provided for in this order involves the use of thoroughfares for which the Chicago Motor Coach Company does not at present possess any certificate of convenience and necessity from this commission, the same should be granted as hereinafter ordered." Section 67 of the Commerce Commission law provides that the commission may at any time, upon notice to the public utility affected and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any rule, regulation, order or decision made by it. The appellants contend that this amendment, which was made without notice to them, was invalid for that reason. The coach company answers that it is the only public utility affected by the order and that the appellants were not entitled to notice under the provisions of section 67. The appellants were parties to the proceeding and had answered the petition. They had appeared by counsel at the hearing, had cross-examined witnesses and had presented evidence. They were interested because the petitioner was their com-

petitor in the territory with which the proceeding was concerned, and much evidence was presented upon both sides upon the question of the capacity of the railway company to meet the transportation needs in that territory.

The commission derives its power only from the statute and has no authority except such as is expressly conferred upon it. (*Public Utilities Com.* v. *Illinois Central Railroad Co.* 274 Ill. 36.) The appellants were interested parties and were affected by the order. Each extension of motor bus service into territory occupied or served by the appellants is a new attack upon the appellants, to be justified only upon the theory that the appellants are not meeting, and cannot reasonably be required to meet, the public need. (*Egyptian Transportation System* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580.) One of the purposes to be served by legislation concerning public utilities is to protect an established public utility in its field from destructive competition. The essence of this proceeding, so far as the appellants were concerned, was to determine the question whether public convenience and necessity required that they be subjected to the competition of the coach company over particular streets in Chicago. They were entitled to notice before the amendment was made, and since none was given, the order making the amendment was void.

It follows that the rehearing asked by the appellants should have been allowed. The appellants contend that in fact the rehearing was allowed, basing their contention on the record of the commission, which shows that at the meeting of the commission at which the petition for rehearing was considered six of the seven members of the commission were present, of whom three voted to allow a rehearing, two voted against it and the remaining member refused to vote. The appellants argue that when a quorum of a legislative or administrative body is present, engaged in the transaction of business, the vote of a majority of a quorum in favor of any proposed action is a decision in

favor of such action; that it was the duty of each commissioner present to vote either to grant or deny the petition, and that his presence and failure to vote is to be taken as assent to the action of the majority who do vote. The appellee contends that the rehearing was denied. The first section of the Commerce Commission act provides that "every finding, order or decision approved by a majority of the members of the commission shall be deemed to be the finding, order or decision of the commission." This declaration expressly requires the approval by a majority of the members of every finding, order or decision of the board and excludes every finding, order or decision not having such approval. When the law under which a legislative body is organized requires the concurrence of a majority of all its members in any action, such concurrence of the majority must be shown by the record—it cannot be implied; and where the record shows the concurrence of only a smaller number than a majority, the action proposed is defeated. The rehearing was denied.

The commission finds that the Chicago Motor Coach Company has substantially exercised the authority granted to its predecessor, the Chicago Motor Bus Company, by the order of January 15, 1917, and its order purports to confirm this order in its entirety as of the date of June 22, 1927. This 1917 order granted a certificate of convenience and necessity for the operation of two routes: one from Devon avenue to Sheridan road south through Lincoln Park to the loop, the other from Lakeview avenue and Diversey parkway south to Fullerton avenue and east on Fullerton to Lincoln Park West, then south and southeast on streets west of the park to and along Schiller street and other streets to the loop, returning over the same streets in reverse order. The service authorized over the first of these routes was installed promptly, that over the second route was never installed prior to the application of May 7, 1925. Section 55 of the Public Utilities act provides that "unless

exercised within a period of two years from the grant thereof, authority conferred by a certificate of convenience and necessity issued by the commission shall be null and void." This application of May 7, 1925, was not an application for a renewal of the certificate of 1917 or for a new certificate of convenience and necessity for the same service, but was an abandonment of any claim of public convenience and necessity for that service and a request for a certificate of convenience and necessity for another service in lieu of that one. The certificate granted was for another service by a different route covering a part of some of the streets included in the service which had been originally authorized but had never been instituted, the authority for which, by express provision of the law, had become null and void by the failure to exercise the power within two years of the grant. The service of motor busses carrying passengers on one street or by one route is a different service from that of motor busses carrying passengers on another street or by another route, and a certificate of convenience and necessity authorizing the one service, only, is no authority for the performance of the other service. A certificate for one street, only, does not authorize service on another street. In spite, however, of the fact that there had never been any attempt to exercise the authority to operate motor busses over the route west of the park, the commission held that there had been a reasonable and substantial performance of the authority conferred by the certificate of January 15, 1917, sufficient to avoid the effect of the statutory limitation of two years. There was no evidence of any attempt to institute the service on the route west of the park, and the finding that the Chicago Motor Coach Company had substantially exercised the authority granted to its predecessor, the Chicago Motor Bus Company, by the order of January 15, 1917, had therefore no support in the evidence so far as this route is concerned. The further express finding that "such order is hereby con-

firmed in its entirety as of the present date" is not a finding of fact but is merely an attempt to state a decision that the order of January 15, 1917, is confirmed by the commission. The commission is created by statute and has no powers except such as are conferred by the act creating it. It cannot change any condition fixed by the legislature. (*Public Utilities Com.* v. *Illinois Central Railroad Co. supra.*) It cannot extend the vitality of a power granted by its certificate beyond the statutory limit, and it cannot grant a certificate of convenience and necessity except upon a finding of facts which justifies such order at the time it is made and is itself sustained by the evidence. It cannot, therefore, grant a certificate of convenience and necessity based solely upon a certificate of convenience and necessity more than two years old, granting authority which has become null and void by a failure to exercise it within two years. *Public Utilities Com.* v. *Chicago and Northwestern Railway Co.* 286 Ill. 53.

It is argued that the two-year limitation is a condition subsequent, that the provision that the authority not exercised should be null and void was not self-executing, and that a forfeiture for a failure to perform the condition could arise only upon a declaration of forfeiture or other positive action showing an intention to insist on the condition. The doctrine in regard to conditions subsequent, which applies to conveyances of and contracts concerning real estate or rights of property in general, has little applicability to cases of this kind. The certificate of public convenience and necessity confers no property right on the utility in whose favor it is granted. It is not irrevocable, to be accepted at any time the utility may choose, but is a mere permission to do a specified act within a fixed time; a license, which expires by its terms at a fixed date; an option, which must be exercised within a limited time or not at all. Until the option is accepted and the license is acted upon within the time in which it is available no right

vests in the utility, and after that time expires the license lapses and no revocation is needed to revoke the license. *Atchison Street Railway* v. *Nave*, 17 Pac. (Kan.) 587.

In *Manton* v. *South Shore Traction Co.* 106 N. Y. Sup. 82, the highway commissioners of the town of Islip granted to a traction company consent for the construction of a railway upon certain highways but on condition that at least one track should be constructed and in operation within two years, "otherwise all rights and privileges under this franchise shall cease and determine." The company not having built the track within two years, it was held that at the end of two years the franchise ceased absolutely by its own terms and by every consideration of public policy and private good faith; that the only way by which the company could acquire any rights in the highways was by filing a new application and obtaining a new grant, and that the highway commissioners could not waive the time limitation and revive the expired franchise.

In *Blocki* v. *People*, 220 Ill. 444, the Chicago city council passed an ordinance granting to the South Chicago City Railway Company authority to lay tracks on about thirty-five miles of streets, the company to lay and have in operation a single track on certain portions of the streets in two years and a double track on other portions in five years. The consent of the commissioner of public works was required to be obtained before the commencement of any work. All privileges granted by the ordinance were absolutely to cease and terminate as to any portion of the streets on which lines were not in operation within the time specified, unless the construction was delayed by injunction. After the expiration of the time limit the railway company applied to the commissioner of public works for a permit to build a double-track street railway on one of the streets, which was refused on the ground that the privilege granted to the relator by the ordinance had terminated as to that street because the construction of the work had not been

completed within the time fixed. The company applied for a writ of *mandamus* to compel the commissioner to issue the permit. A demurrer having been overruled to the petition and the defendant electing to stand by his demurrer the court entered judgment awarding the writ, which the Appellate Court affirmed. This court reversed the judgment, saying: "Had the railway company failed to comply with the conditions of the ordinance as to the time in which it should construct its tracks, without justifiable excuse, we think the law too well settled to call for the citation of authorities, that all its rights and privileges would have ceased." The case of *People* v. *Steers,* 143 N. Y. Sup. 52, was similar in principle and the court arrived at the same result.

In *Los Angeles Railway Co.* v. *City of Los Angeles,* 152 Cal. 242, it was held that failure to comply with the provisions of the ordinance granting a street railway right of way works a forfeiture, the statute is self-executing, and in case the ordinance provides that failure to complete the work within the time limit shall forfeit the franchise, no judgment declaring forfeiture is necessary.

The appellee contends that the provision that upon a certain condition the certificate shall be null and void is uniformly interpreted voidable at the option of the granting body, while the provision that upon a certain condition the grant shall cease and determine means that the grant is self-determining. The language in *Manton* v. *South Shore Traction Co. supra,* was, "all rights and privileges under this franchise shall cease and determine;" in *Atchison Street Railway* v. *Nave, supra,* "the rights conferred thereby should cease and determine;" in *Blocki* v. *People, supra,* all privileges granted should cease and terminate; in *People* v. *Steers, supra,* that "its corporate existence and powers shall cease."

Counsel cite in support of their constructions, *New York and Long Island Bridge Co.* v. *Smith,* 148 N. Y. 540, in

which there was a provision in the charter of a bridge corporation to the effect that a bridge should be commenced within two years, "or this act, and all rights and privileges granted hereby, shall be null and void." The work was not commenced within two years, and upon an application by the bridge company for condemnation to condemn certain lands, one of the owners contended that the company had lost its rights through non-user. The court said: "It is to be observed that the question as to whether a forfeiture clause is or is not self-executing depends wholly upon the language employed by the legislature. Our attention is called particularly to *In re Brooklyn W. & N. Ry. Co.* 72 N. Y. 245, and *Brooklyn*, 78 id. 524. In the first case the words of forfeiture were, 'Its corporate existence and powers shall cease,' and this court held that upon default the corporation's existence and powers ceased without judicial proceedings. In the second case the words of forfeiture were, 'This act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated,' and this court held the clause to be self-executing, thereby recognizing the undoubted power of the legislature to provide that corporate existence shall cease by the mere fact of failure of the corporation to perform certain acts imposed by the charter. It requires, however, strong and unmistakable language, such as each of the cases referred to presents, to authorize the court to hold that it was the intention of the legislature to dispense with judicial proceedings on the intervention of the Attorney General. In the case at bar the words of forfeiture are, 'All rights and privileges granted hereby shall be null and void.' It cannot be said that the words 'shall be null and void' disclose the legislative intent to make this clause self-executing. The words 'null and void,' as used in this connection, clearly mean voidable. The word 'void' is often used in an unlimited sense, implying an act of no effect; a nullity *ab initio*. (*Inskeep* v. *Lecony*, 1 N. J. L. 112.)

In the case at bar it was not so employed, but rather in its more limited meaning. We think these words mean no more than if the legislature had said in case of default, the corporation 'shall be dissolved.' " This is the sole case cited to support the counsel's statement that the phrase "null and void" is uniformly interpreted to mean voidable at the option of the granting body. It is true that the words "null and void" are sometimes, by reason of context or circumstances, construed "voidable," but that is not their primary meaning. If they are to be wrested from their ordinary meaning by construction, some reason which appeals to the judgment should be given for the change. No such reason is found in the statement, "It cannot be said that the words 'shall be null and void' disclose the legislative intent to make this clause self-executing." The words as clearly destroy the effect of the act as would the words, "all rights and privileges granted hereby shall cease and determine." If they cease and determine they become null and void, and if they become null and void they cease and determine. Nor is the argument strengthened by the statement, "The words 'null and void' as used in this connection clearly mean voidable."

The order of the commission confirming in its entirety as of the present date the order of January 15, 1917, is inconsistent with the further provision found in the order that the authority granted by the order of January 15, 1917, for the operation of busses "on Lakeview avenue and Fullerton parkway be not canceled by the issuance of a certificate of convenience and necessity authorizing the Chicago Motor Coach Company to operate its motor coaches over Stockton drive between Fullerton parkway and a point intermediate between Fullerton parkway and Diversey parkway, where there is a driveway connecting said Stockton drive and Lakeview avenue, and over said connection driveway, but that such authority be inoperative in regard to the aforesaid thoroughfares throughout such time as this com-

mission orders the petitioner herein to operate its busses on Stockton drive between Fullerton parkway and said connecting driveway between Stockton drive and Lakeview avenue and upon such connecting driveway." If the order confirming and reviving the order of 1917 in its entirety as of the date of June 22, 1925, had any justification, the commission must have found that public convenience and necessity on June 22, 1925, required bus operation on the routes authorized by that order on that day. The order, however, was made without any finding that the same conditions existed at the time the finding was made as existed in 1917, or any evidence which would support such a finding, or that public convenience and necessity would be served in 1925 by operating the routes authorized by the order of 1917. Moreover, the order which confirms the order of 1917 necessarily holds that public necessity and convenience do not require the operation of that part of the route as to which the order is declared inoperative.

In the order of June 22 the coach company was given authority to operate over Madison and Monroe streets between State and Dearborn streets and was required to select which of the two it would operate over and notify the commission of its selection, the commission retaining the right to order operation over the one or the other, as the commission should deem best. The busses were required to be operated over routes 44 and 56, south-bound, on State street, and north-bound on Dearborn street, a block west of State street. The application for the certificate asked that the turning street be Monroe. It appeared from the evidence that Madison street, a block north of Monroe, was wider than Monroe and might for that reason be a better street for turning. The application of the coach company did not ask for authority to operate over Madison street. It offered no testimony that public convenience and necessity would be served by any such operation and the commission made no such finding. This part of the

order was not based on any finding of the commission but purported to give the power of selection of the street it would use to the coach company.

It is contended that there was no substantial evidence showing that public convenience and necessity required the bus service. " It is not the policy of the Public Utilities act to promote competition between common carriers as a means of providing service to the public. The policy established by that act is, that through regulation of an established carrier occupying a given field and protection of it from competition the public will be served more efficiently and at a more reasonable rate than if other competing lines were authorized to render the same public service in the same territory. Methods for the transportation of persons are established and operated by private capital as an investment, but as they are public utilities the State has the right to regulate them by such regulations as are reasonable. The policy of the Public Utilities act is that existing utilities shall receive a fair measure of protection against ruinous competition. Where one company can serve the public conveniently and efficiently, it has been found from experience that to authorize a competing company to serve the same territory ultimately results in requiring the public to pay more for transportation in order that both companies may receive a fair return on the money invested and the cost of operation. The Commerce Commission has no arbitrary powers. Its orders must be reasonable and lawful, and the question whether they are so or not is subject to review on appeal. To authorize the Commerce Commission to grant the coach company a certificate of convenience and necessity and authority to operate its lines to serve the same public already served by the appellants, it was required that it be shown that appellants were not rendering adequate and convenient service and that the operation of the bus lines would eliminate such inadequacy and

inconvenience. In determining that question the primary consideration is the convenience and necessity of the public. Whether the public convenience and necessity require the establishment of a new transportation facility is not determined by the number of individuals who may ask for it. The public must be concerned as distinguished from any number of individuals. (*West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87; *Choate* v. *Commerce Com.* id. 248.) To authorize an order of the Commerce Commission granting a certificate of convenience and necessity to a carrier though another is in the field, it is necessary that it appear, first, that the existing utility is not rendering adequate service, and it is but a matter of fairness and justice that it be shown that the new utility is in a position to render better service to the public than the one already in the field. It is in accord with justice and sound business economy that the utility already in the field be given an opportunity to furnish the required service where it offers and is able to do so. (*Egyptian Transportation System* v. *Louisville and Nashville Railroad Co. supra.*) Where additional or extended service is required in the interest of the public and a utility in the field makes known its willingness and ability to furnish the required service, the Commerce Commission is not justified in granting a certificate of convenience and necessity to a competing utility until the utility in the field has had an opportunity to demonstrate its ability to give the required service. (*Bartonville Bus Line* v. *Eagle Coach Line,* 326 Ill. 200.) [89]The railway companies offered to meet any requirements for transportation that are not being adequately met and contend that they are able to do so. Evidence was introduced on the question of the adequacy of the service furnished by the street railway companies and whether public convenience and necessity required additional transportation facilities, and the commission found in this connection: "That the Chicago Surface Lines, due

to the physical conditions at certain street intersections, as, for example, the intersection of North Clark street and Center street, which may be designated as 'traffic throats' or 'control points,' and which are now utilized to the limits of their capacity, are not in a position to increase their present operations, and are powerless, either by voluntary action or under the order of the commission, to furnish additional transportation service which the public convenience and necessity of the territory concerned herein requires." The relative importance of the railway companies, the elevated system and the coach company in Chicago transportation is shown by the fact that in 1924 the coach company, on its three divisions serving the north, south and west parts of the city, carried 49,268,427 passengers, the railway companies carried 830,151,540 and the elevated lines 212,901,024. The figures for 1925 were, 58,298,006 for the coach company, 840,992,639 for the street railway companies and 216,045,575 for the elevated lines. In both years the coach company carried about five per cent of the traffic, the elevated lines a little less than twenty and the street railway companies slightly more than seventy-five per cent. The operation of motor busses has contributed to the density of street traffic and the difficulties of street car operation on streets where both street cars and motor busses are operated and traffic is dense, and the addition of more motor busses would add to the street congestion, to the inconvenience of the users of the street cars and to the detriment of the general convenience, safety and welfare of the public.

Against the commission's third finding, undisputed evidence was given showing that after the checks and observations were made upon which was based the finding that the street railway facilities had reached the limit of their capacity at North Clark and Center streets, these facilities had actually been increased by the operation of more cars, that schedules were then in preparation and soon to be put into effect for further increasing the service by adding three

more cars to the Broadway line, which operates on Clark street past Center; and still further it was shown that if additional improvement was needed the street railway companies were able and willing to take the Lincoln avenue cars off Clark and thus give room for more cars on the Clark and Broadway lines, and that this could be done without the construction of new tracks and without the necessity of obtaining frontage consents; that if additional facilities were required, the existing tracks on Dearborn, LaSalle and Wells streets could be utilized, and also Franklin street could be used by combining the Lincoln avenue and State street lines and coupling up certain of the north and south side lines so as to increase the capacity of the north side service. In spite of this evidence and of the statements of the appellants of the manner in which additional facilities could be provided and of their ability and willingness to furnish any additional facilities which might be required to meet the transportation needs, the commission proceeded to give its certificate of public convenience and necessity. This action was not reasonable under the circumstances. The commission is not justified in granting a certificate of convenience and necessity to a competing line until the utility in the field has had an opportunity to demonstrate the truth of its statement and to give the required service. *Egyptian Transportation System* v. *Louisville and Nashville Railroad Co. supra.*

The judgment of the superior court is reversed and the certificate of convenience and necessity set aside and the cause is remanded to the superior court, with directions to remand it to the Commerce Commission for further action not inconsistent with this opinion.

*Reversed and remanded, with directions.*