(No. 15389.—Judgment affirmed.)

THE COMMERCE COMMISSION *ex rel.* The City of Bloomington, Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *et al.* Appellants.

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. PUBLIC UTILITIES—*provision of Public Utilities act prescribing rule as to when court may set aside decision of commission is invalid.* The provision of section 68 of the Public Utilities act that the decision of the Commerce Commission shall not be set aside by the circuit court "unless it clearly appears that the finding of the commission was against the manifest weight of the evidence" is an attempt to prescribe a rule governing judicial action and is unconstitutional, as due process of law requires a judicial tribunal to make its decision on the law and the facts, according to settled rules governing judicial action.

2. SAME—*finding of commission is entitled to weight in doubtful cases.* All doubts as to the propriety of means or methods adopted by the Commerce Commission in the exercise of power conferred upon it must be resolved in favor of the commission's action, and where the facts are controverted and the decision depends upon credit to be given contradictory testimony, the courts will give great weight to the finding of the commission.

3. SAME—*general rule in reviewing decision of commission.* In reviewing a decision of the Commerce Commission the court should consider the evidence and if the order of the commission is without substantial foundation in the evidence it should be set aside, but the court should not assume the duties of the commission and try anew matters within its jurisdiction, and if the commission's order rests on a reasonable and substantial basis and does not infringe constitutional rights it should be sustained.

4. SAME—*whether separation of grades is required at railroad crossing is a question of fact.* Whether it is reasonable to require a separation of grades at a railroad grade crossing in a city is a question of fact in the determination of which no general rule can be applied; but to warrant a finding that a grade crossing is dangerous it is not necessary that the evidence show the destruction of property or life by reason of collisions.

5. SAME—*commission may require public to pay part of cost of separating grades at railroad crossing.* Under the Public Utilities act the Commerce Commission may require the public to pay part of the cost of separating the grades at a railroad crossing in a

city, as such an improvement is primarily for the benefit of the public in the use of the street.

6. Same—*a grade crossing, if shown to be unsafe, may be ordered changed regardless of financial condition of railroad company.* The people have a right to insist that the public highways be kept safe whatever may be the cost to the parties introducing the danger, and under the Public Utilities act a railroad company may be compelled to bear a portion of the expense of separating the grades at a grade crossing in a city notwithstanding the financial condition of the company, if from the evidence it reasonably appears that the public safety requires the change.

7. Constitutional law—*courts cannot inquire into expediency of statutes.* The courts have no right to inquire into the expediency or wisdom of acts of the legislature or of its administrative bodies.

Appeal from the Circuit Court of McLean county; the Hon. Edward Barry, Judge, presiding.

George B. Gillespie, and Burton & Hamilton, (A. E. & R. C. DeMange, W. K. Bracken, George M. Gillespie, and Thomas E. Gillespie, of counsel,) for appellants.

Richard M. O'Connell, Corporation Counsel, (Edward J. Brundage, Attorney General, W. E. Trautmann, and A. D. Rodenberg, of counsel,) for appellee.

Mr. Justice Thompson delivered the opinion of the court:

The Commerce Commission entered its order requiring a separation of grades at a railroad crossing in the city of Bloomington, based upon a finding that in its opinion the public safety required the change. This order was confirmed by the circuit court of McLean county, and appellants appealed.

Bloomington has a population of approximately 30,000, and immediately to the north of it is the city of Normal with a population of 5000. The business district of Bloom-

ington is in the heart of the city and is about six blocks wide and eight blocks long. The Cleveland, Cincinnati, Chicago and St. Louis Railway Company (the Big Four) and the Lake Erie and Western Railway Company operate parallel lines of railroad through the southwest part of the city. The railroads enter the city from the south, about six blocks east of Main street, and extend northerly and northwesterly, crossing Main street about three blocks south of the principal business district and continue northwesterly and westerly through the city. The tracks are laid in a valley and Main street declines toward the tracks, the grade being about four per cent. North of the tracks and east of Main street is the passenger depot of the two railroads. Crossing Main street are seven tracks, the distance between the north rail of the north track and the south rail of the south track, measured along the middle line of Main street, being eighty-one feet. The north track is the Lake Erie main, the next track is the Big Four main, and the south five tracks are Big Four switch tracks. Immediately south of the tracks and abutting on the west side of Main street is the Big Four freight house. Main street is eighty feet wide north of the tracks and sixty-six feet wide south of the tracks. It is a paved thoroughfare extending through the heart of the cities of Bloomington and Normal. The Bloomington and Normal Railway and Light Company has a double track laid in Main street, except for a distance of a few hundred feet where it crosses the railroad tracks, where it maintains a single track. Immediately east of Main street is East street, a north and south street traversing the business district and crossing the railroad tracks east of the depot. The first north and south street west of Main street is Center street, and the next is Madison street. In the latter street are laid the tracks of the Illinois Traction System. The first through east and west street north of the Main street railroad crossing is Olive street, and the first through east and west street

south of the crossing is Oakland avenue. All the streets named are paved thoroughfares. Between Olive street and the crossing are two east and west alleys. Immediately south of the Big Four freight house Mill street extends west from Main street. About one-fifth of the territory within the corporate limits lies south and west of the railroads. In this territory are about one-third of the residences of the city, twenty neighborhood stores, two public schools, two parochial schools, seven churches, a hospital, three cemeteries, a large public park, an amusement park and a baseball park. All the streets crossing these railroads within the city limits cross at grade, there being twenty-three grade crossings of the Big Four and twenty-nine of the Lake Erie. Main street extended into the country south from Bloomington and north from Normal is a public highway and is a part of route No. 2 of the State-wide system of durable hard-surfaced roads, which is the route running through Rockford, Dixon, LaSalle, Bloomington, Decatur, Vandalia and Cairo. There is a street car crossing the railroad tracks on Main street every ten minutes from 6 A. M. to 12 midnight every day, and there are extra cars when there are games at the Three-I baseball park, or when there is a band concert, a circus or some other special attraction at the other parks. By actual count on Saturday, September 17, 1921, between the hours of 7 A. M. and 6 P. M. 1191 pedestrians and 2007 vehicles crossed the tracks, and seventy-six trains, containing 376 cars, crossed Main street at this crossing. On the following day, Sunday, between the same hours, 1044 pedestrians and 2212 vehicles crossed the tracks, and fourteen trains, containing 222 cars, crossed the street. The next day it was raining and the count was made only from 7 A. M. to 10 A. M. During these three hours twenty-three trains crossed the street. The traffic on these days was normal. This evidence shows, without contradiction, that two pedestrians and three vehicles cross the tracks on Main street every minute, and that on week days,

when there is switching on Big Four switch tracks, a train crosses the street every eight minutes. All of the switching service to the Big Four freight house must cross this street. The evidence shows that pedestrians and vehicles are constantly delayed but that the delays are short. It also shows that there have been a few minor collisions at this crossing, but fortunately the collisions have been remarkably infrequent and the damage to property and persons has been practically nil. It is proposed to separate the grades by building a viaduct over the tracks. Because the tracks are laid in a depression the viaduct will be less than two blocks in length and can be built with a grade of five per cent. It is estimated the cost will be less than $175,000.

Section 68 of the Public Utilities act allows an appeal to the circuit court for the purpose of having the reasonableness or lawfulness of the decision of the Commerce Commission considered and determined. The court must consider the case on the evidence heard by the commission and has authority to confirm or to set aside the commission's decision. This section further provides that "the decision of the commission shall not be set aside unless it clearly appears that the finding of the commission was against the manifest weight of the evidence." This provision of the statute is an attempt to prescribe a rule governing judicial action and determination and therefore contravenes article 3 of the constitution of 1870. (*Otis Elevator Co.* v. *Industrial Com.* 302 Ill. 90.) Due process of law requires submission to a judicial tribunal for determination upon its own independent judgment as to both law and facts according to the settled rules governing judicial action and decision. While under the police power inherent in the people of the State the legislature has authority to provide for the public safety and welfare it has not undertaken to act directly in the matter of altering grade crossings, but it has delegated to an administrative body power to determine, after a hearing, when the public safety demands that a

grade crossing shall be altered. It has further provided that the decision of the administrative body created by it shall be subject to review by the courts, and having provided for this judicial review it cannot select this class of cases and by a special act provide for them a different rule of decision from that which is applicable to other cases. Great power has been vested in the Commerce Commission by the Public Utilities act, and it is clear that the legislature intended to create an office of dignity and great responsibility. There is no reason why the members of this commission should not develop and establish a system of rules and precedents as wise and beneficial within their sphere of action as those established by the early common law judges. All doubts as to the propriety of means or methods used in the exercise of the powers clearly conferred upon them should be resolved in favor of their action in the interest of the administration of the law. There should be ascribed to their decisions the strength due to the judgment of a tribunal appointed by law and informed by experience. (*Public Utilities Com.* v. *Springfield Gas and Electric Co.* 291 Ill. 209.) Where the facts are controverted and the decision depends upon credit to be given contradictory testimony the courts will give great weight to the finding of the commission, which is qualified by experience and special study to weigh the facts and circumstances applicable to cases within its jurisdiction. (*Keller* v. *Industrial Com.* 302 Ill. 610.) It is the duty of the courts to weigh and consider the evidence, and if it is found that the order of the commission is without substantial foundation in the evidence it should be set aside. On the other hand, it is not intended that the courts should assume the duties of the commission and try anew matters within its jurisdiction, and if from any reasonable view of the evidence the commission's order rests on a reasonable and substantial basis and does not infringe any of the constitutional rights of the parties it should be sustained.

Section 58 of the Public Utilities act gives the Commerce Commission power, after a hearing, to require a separation of grades where a public highway crosses the tracks of a railroad when in its opinion the public safety requires such separation, and to prescribe the terms upon which such separation shall be made and the proportion in which the expense of the separation of such grades shall be divided between the railroad and the municipality. Whether it is reasonable to require a separation of grades is a question of fact, and no general rule can be stated which will serve as a guide for determining the question in all cases. Naturally, the principal things to be considered are the location of the crossing and its surroundings and the volume of traffic using it. It is not necessary for the public to wait until much of its property has been destroyed and many lives have been lost by reason of collisions at a crossing before the crossing can be declared to be dangerous. Fortunately there have been few accidents at the crossing in question, and if the number of accidents were to control we might well hesitate to say that this crossing is dangerous. On the other hand, every reasonable man must conclude that a crossing situated as this one is is always a source of danger. The street declines to the tracks from both directions. The view of trains approaching from the west is obstructed by the freight depot on the south side and by large industrial buildings on the north side of the tracks. There are service tracks running up to the east side of Main street south of the main switch tracks, and frequently the view of trains approaching from the east is obstructed by cars standing on these spurs or by materials unloaded alongside them. With trains crossing the street every eight minutes and five persons or vehicles crossing the tracks every minute throughout the day, it is manifest that the commission was justified in finding the separation of these grades would promote the safety of the public and the employees and passengers

of the railroads and the street railway. We are not warranted in interfering with its judgment on this question and so it must stand.

Appellants contend that they are now operating their roads at a loss and that they are not now financially able to comply with the order of the commission. The commission has not yet determined how the cost will be apportioned among the several railroads and the public. The statute provides, and this court has held that it is proper, for the commission to require the public to pay part of the cost of separating these grades. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337.) Grade crossings call for the necessary adjustment of two conflicting interests,—that of the public using the streets and that of the railroads and the public using them. Generally the streets represent the more important interest of the two. The whole public demands their use, while the railroads, vital as they are, are used by a part of the public, only. The people have a right to insist that the public highways be kept safe, whatever may be the cost to the parties introducing the danger. That the people might be so shortsighted that they would destroy the railroads by placing on them unnecessary burdens has no bearing on the question before us. The courts have no right to inquire into the expediency or wisdom of the acts of the legislature or of its administrative bodies. If from the evidence it reasonably appears that the public safety requires the change it is for the legislature to say whether it will insist upon it, and prospective bankruptcy of the railroads affected cannot take away the fundamental right of the sovereign of the soil to keep its public highways safe. (*Erie Railroad Co.* v. *Board of Public Utility Comrs.* 254 U. S. 394, 41 Sup. Ct. 169; *Same* v. *Same,* 89 N. J. L. 57, 98 Atl. 13.) Intelligent self-interest should lead to a careful consideration of what the several railroads are able to do without ruin, but this is not a problem for the courts.

The commission's order is in proper form and is amply supported by the evidence. The circuit court properly confirmed the commission's decision, and the judgment is therefore affirmed.                    *Judgment affirmed.*