(No. 19065.—

THE TOWN OF SIDNEY, Appellant, *vs.* THE WABASH RAILWAY COMPANY *et al.* Appellees.

*Opinion filed December 20, 1928.*

A. B. DENNIS, and F. T. CARSON, (C. H. SWICK, of counsel,) for appellant.

ROY R. CLINE, State's Attorney, (CLARK & NOEL, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Illinois Commerce Commission entered its order on September 14, 1927, confirming, except as to some details, its previous order of October 14, 1926, requiring a separation of grades, whereby the present highway known as State aid road No. 12, in Champaign county, should pass underneath the railroad tracks of the Wabash Railway Company on the east corporate line of the village of Sidney, Illinois. The order of the commission recited that public safety, necessity and convenience required the construction of a subway at the point designated, and the expense thereof was apportioned forty-five per cent against the Wabash Railway Company, forty-five per cent against Champaign county, and ten per cent to be paid for by Sidney township. An appeal was taken by Champaign county to the circuit court of that county, where the order of the commission was set aside as being unreasonable and unlaw-

ful. From that judgment Sidney township has prosecuted an appeal to this court.

The petition was filed with the Commerce Commission during March, 1926, and was signed, "Town of Sidney, by E. J. Anders, supervisor." The record discloses that several hearings were held before the commission, and that all parties interested were represented when evidence relative to the merits of the petition was heard and considered by the commission. The facts presented upon the hearings were substantially as follows: Sidney township is one of the southeasterly townships of Champaign county, and the village of Sidney is near the central part of the township. The village is located in a farming community. The Wabash railway extends east and west through the village and has a water tank for the use of its engines located upon its right of way. State aid road No. 12 extends north from the village of Longview, located near the south boundary line of Champaign county, for a distance of about nine miles, passing along the east corporate line of the village of Sidney, where it crosses the Wabash railway tracks at grade and on an angle of about eighty-two degrees. About two blocks north of the railway tracks the same road connects with another improved county road known as State aid road No. 4, which extends from Champaign and Urbana through the village of Sidney to Homer, Illinois. All of State aid road No. 12 has been improved with a nine-foot pavement, except a block or two on either side of the Wabash tracks, and one-half of the road where it passes along the village of Sidney is within the village limits. From this highway, at a point south of the railroad crossing, a dirt road or street extends westerly a few blocks along the south side of the railroad right of way to the business part of the village, which is located on both sides of the tracks. At the grade crossing are two parallel railroad tracks, the north or main line track and the south one, which is quite long and is known as the west-bound passing track. Immedi-

ately west of the grade crossing is a spur-track extending westerly out of and parallel with the passing track and used for local commercial purposes. All of these tracks at the crossing are located upon a grade or embankment about eight feet above the general level of the ground on the south side of the crossing. Dwelling houses and some out-buildings are located along the west side of the highway on the north and south sides of the railroad and to some extent prevent the view of trains approaching from the west. There is a clear view at the crossing, when no railroad cars are upon the passing track, of approaching west-bound trains. Quite often a train stands on the main track while its engine is taking water, and vehicular and pedes-trian traffic is thereby delayed. A train sometimes stands upon the passing track at or near the grade crossing wait-ing for another train to pass on the main line track, and the view of such moving train is obscured and the crossing made much more dangerous for travelers approaching the grade crossing from the south. Not all trains stopped on the grade crossing are uncoupled or cut to let highway traffic through, and the highway traffic is not always pro-tected from the danger of a main line train when such traffic is passing through a crossing gap made in a train standing upon the passing track. During the last two days in April and the first five days of May, 1926, a record was made of highway traffic passing over the grade crossing here in question. It showed a daily average of 215 auto-mobiles, nine other vehicles and 30 pedestrians from six o'clock A. M. to six o'clock P. M., and for the other twelve-hour period of the days there was an average of 101 auto-mobiles and 13 travelers on foot. During this check there was some north-bound traffic which turned west toward Sidney over the dirt road near the grade crossing instead of crossing the railroad tracks at that point. A week's check of train movements was also made at this crossing during the middle of May, 1926, and this record gave an

average of about 23 trains per day. The east and west-bound trains were about the same in number, freight trains being in excess of passenger trains. State aid road No. 12, as improved, serves the southeastern portion of Champaign county from Longview north to Sidney, where it connects with State aid route No. 4, which takes care of the traffic northwesterly toward Urbana and easterly toward Homer. The commission found the route an important one to Champaign county, Sidney township and the village of Sidney. The order of the commission recited that Sidney township would doubtless receive greater direct benefit from the construction of a subway at the crossing than the county because of the local use made of the road. County road No. 12 is a part of the system of State aid roads of Champaign county, which the people of the county voted in 1923 to build and to issue bonds in payment thereof in amount of $2,500,000. The system contemplated the improvement of most of the main unimproved roads of the county, and there were seventeen railroad highway crossings in the proposed system, but the manner of crossing any railroad track was not provided for or suggested when the road construction and bond issue were authorized by vote. There is some confusion in the record as to whether the supervisors of Champaign county, or its special hard road bond issue committee having in charge the actual construction of the improved roads as proposed by the county State aid system, actually authorized, approved and provided for the construction or excavation of a subway crossing at the place here involved. The county superintendent of highways and engineer of the highway department stated that he had drawn no subway plans, but the officials of the county understood when the county road bond issue was voted upon that a subway was to be constructed at Sidney under the Wabash railroad tracks. The record also contains correspondence between the county highway engineer and an official of the Wabash Railway Company

wherein the former was endeavoring to obtain the financial co-operation of the railway company for the construction of a subway at the grade crossing. The record shows the construction cost of the subway, completed with fourteen-foot vertical clearance, to be about $48,000, and that the county's share thereof would be approximately $25,000. The record also discloses that a fill or embankment could be made whereby the grade of the highway approaching the grade crossing from either side would be raised and the road completed for about $6600. It also appears that a representative of the railroad company, at a hearing before the commission, offered, if the highway grade was raised and the crossing constructed across and on a level with the railroad tracks and if the traffic was sufficiently heavy in the opinion of the commission to warrant, to install, at an approximate expense of $2500, flash-light or wigwag signals for the safety and protection of the public. Prior to the filing of the petition before the Commerce Commission by Sidney township the board of supervisors of Champaign county on September 10, 1925, passed a resolution approving and confirming the plans and authorizing the construction of a crossing at grade where State aid road No. 12 crosses the Wabash railroad tracks at Sidney. The resolution recited that the construction of a subway would so deplete the funds for State aid road construction as to make it impossible to carry out the plan of construction of State aid roads pursuant to the county bond issue authorized therefor.

The Commerce Commission was of opinion that a subway at the place designated could be constructed for a reasonable sum and that such construction would forever eliminate the hazards of a grade crossing. It is the contention of appellant, Sidney township, that the Commerce Commission was correct in its conclusion, and counsel rely for a reversal of the case upon the rules established in previous cases, that the orders of the Commerce Commission

are entitled to great weight and can only be set aside if arbitrary, unreasonable or in clear violation of some rule of law; that courts should interfere with such orders only so far as necessary to keep them within the jurisdiction of the commission and to protect constitutional rights; that where there is substantial evidence to warrant it, an order of the commission should be sustained. *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 Ill. 412; *Commerce Com.* v. *Omphghent Township,* 326 id. 65.

Section 58 of the Public Utilities act (Cahill's Stat. 1927, p. 1982,) gives the Commerce Commission power, after a hearing, to require a separation of grades where a public highway crosses the tracks of a railroad, when in its opinion the public safety requires such separation. The same section also authorizes the commission, after a hearing of the parties, to prescribe the terms upon which such grade separation shall be made and the proportion in which the expense of the separation of such grades shall be divided among the railroad company affected and the State, county, municipality or other public authority in interest. Whether it is reasonable to require a separation of grades is a question of fact, and no general rule can be stated which will serve as a guide for determining the question in all cases. The important and outstanding things to weigh and consider are the location of the crossing, the conditions surrounding it and the amount of traffic passing over it. The orders and decisions of the commission are subject to review by the courts as to the reasonableness of the commission's conclusion, and an unreasonable order is unlawful. (*Commerce Com.* v. *Omphghent Township, supra.*) The order of the commission should be set aside if the evidence in the record shows the order to be without substantial foundation. *Commerce Com.* v. *Clevcland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.

Doubtless, no one would take issue with the statement that any railroad grade crossing which is used in the regu-

lar course of railroad business is a more or less dangerous place, requiring care and caution on the part of the pedestrian as well as the vehicular driver under our present methods of transportation. The hazard or risk at such a crossing depends upon the volume of traffic over it. Positive and complete safety of the public from all danger at railroad crossings could perhaps only be accomplished by grade separations. However, with our network of railroads and our unusual progress in hard-surfaced road improvement such an accomplishment would, from a financial standpoint, be practically impossible at the present time. We know from observation and experience that many railroad grade crossings exist in cities, towns and rural communities. Some are protected, so far as the public is concerned, by watchmen, some by gates, some by flash-lights or other signals, and others have nothing but perhaps a painted warning sign. In the present day the degree of protection contemplated for the public benefit seems to be based upon the crossing's surroundings and the volume of traffic over it. The road here in question is not a part of any State highway system as contemplated by legislative enactment under the two large State bond issues authorized for that purpose. The road does serve the people in the southeastern part of Champaign county going to and from the village of Sidney or connecting there with another improved east and west county road, but Route 12 carries no heavy or constant flow of traffic from one large city to another or from one distant point to another. The check of traffic for a week's period shows the highway traffic to be moderately light and the train movements over the crossing not numerous. The photographic exhibits in the record, as submitted by both parties, show there is a clear view of trains approaching from the east and the view to the west is not so seriously obstructed that the place might be designated a blind crossing or could be considered an exceptionally hazardous one. The record further

discloses that the raising of the highway grade approaching the railroad tracks from either side is feasible and thereby the view of trains in either direction would be greatly improved. The installation of some of the methods used for grade crossing protection would further lessen the risk of the traveling public. The people have a right to insist that public highways be kept safe regardless of cost to the persons introducing or causing the dangerous condition, and it is not necessary for the public to wait until much of its property has been injured or destroyed and many lives lost by reason of collisions at a grade crossing before such crossing may be declared to be a dangerous one. However, at the crossing here involved the record shows no accident or collision to have ever occurred. The board of supervisors of Champaign county by their action in September, 1925, decided to have and construct a grade crossing over the Wabash tracks. Though the resolution of the board seems to be based upon a subway construction causing too great a depletion of county bond issue road funds, yet we feel sure that if this grade crossing were of such an unusually hazardous nature such action would not have been taken by such a body, which is usually fully informed as to local conditions. It may be that the construction of a subway at the point in question would prevent the delay or blocking of traffic there and would be of further benefit to the residents in the village of Sidney and in Sidney township, the latter, only, of whom are under the commission's order apportioned with a small percentage of the estimated cost, but in our opinion the record does not present a situation or condition which warrants the conclusion reached by the Commerce Commission.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*