(No. 30897.—

WABASH RAILROAD COMPANY, Appellee, *vs.* THE ORDER OF RAILWAY CONDUCTORS OF AMERICA *et al.*—(ILLINOIS COMMERCE COMMISSION, Appellant.)

*Opinion filed January 19, 1949—Rehearing denied March 16, 1949.*

J. A. McCLAIN, JR., and R. B. ELSTER, both of St. Louis, Mo., and LE FORGEE & SAMUELS, of Decatur, (C. C. LE FORGEE, and E. WAYNE SCHROEDER, of counsel,) for appellee.

GEORGE F. BARRETT, Attorney General, IVAN A. ELLIOTT, Attorney General on rehearing, both of Springfield, (WILLIAM C. WINES, JAMES C. MURRAY, and RAYMOND S. SARNOW, all of Chicago, of counsel,) for appellant.

Mr. JUSTICE GUNN delivered the opinion of the court:

Upon the petition of four of the railway employee brotherhoods the Illinois Commerce Commission on February 3, 1948, entered an order requiring the Wabash Railroad Company to furnish transportation daily to certain of its employees from the depot in Decatur, Illinois, to its yard office in the East Decatur yards, 2.7 miles to the east.

Such transportation was required to be upon a thirty-minute schedule between 12:00 o'clock midnight and 6:00 o'clock A.M. The railroad company made a motion for a rehearing, and upon its denial by the commission appealed to the circuit court of Macon County, where the order of the Commerce Commission was vacated and set aside, and the cause remanded for such proceedings as may be required by law.

The grounds upon which the circuit court vacated the order were: (1) It is unreasonable and unlawful, because it has no substantial basis in the evidence; and (2) the order is unlawful and unreasonable because it is arbitrary, discriminatory, indefinite, and in violation of the equal-protection and due-process clauses of the fourteenth amendment of the United States constitution, and section 2 of article II of the constitution of Illinois. The Commerce Commission has appealed to this court, as allowed by section 69 of the Public Utilities Act (Ill. Rev. Stat. 1947, chap. 111⅔, par. 73,) and assigns as error that both of said grounds of decision set out in the order of the circuit court were in violation of law.

The Wabash Railroad Company has general yards at Decatur, and the yard office thereof is outside the city limits, in what is called East Decatur. It maintains a depot within the city, and likewise has a roundhouse about a mile and one-fourth west of the yard office. The petition was filed on behalf of those employees engaged in the operation of trains, who report at the yard office, and from there go to their various employments. During each day until 12:00 o'clock midnight there is in operation a bus for carrying passengers to the city limits, which is within seven tenths of a mile from the yard office. The depot from which the order required the transportation to start is 2.7 miles from the yard office, and the evidence shows that the homes of many of the employees are just as far from the depot as the yard office is from the home of the employee.

Practically all of the testimony is produced by agents or representatives of the brotherhoods, and the petition is based upon the amendment to section 32 of the Public Utilities Act, (Ill. Rev. Stat. 1945, chap. 111⅔, par. 32,) reading as follows: "The Commission may require railroad companies to provide the necessary transportation for employees engaged in the operation of trains, in getting to and from outlying terminals, when the Commission finds such transportation is necessary."

The evidence shows there are about 120 men who would receive transportation from the depot to the yard office. The means of transportation is not specified in the order, nor does it specify whether the transportation is to be at the expense of the company, or whether it is to be paid a fare for such service. The appellant claims that the order is reasonable and has a basis in the evidence, but the appellee on the other hand disputes this, and the trial court found in its favor. The language of the order, aside from the schedule of trips, is as follows:

"It Is Therefore Ordered by the Illinois Commerce Commission that the Wabash Railroad Company should be, and it is hereby, ordered and directed to provide daily transportation to and from the Wabash Depot in the City of Decatur, Macon County, Illinois, and the Yards office located in the East Decatur Yards for its employees engaged in the operation of its trains which arrive at and depart from the East Decatur Yards, near Decatur, Illinois."

General principles have been established applicable to the review of orders of the Commerce Commission. The purpose of a judicial review of an order of the commission is to keep it within its jurisdiction, so as to not violate any rights guaranteed by the constitution. (*Illinois Central Railroad Co.* v. *Commerce Com.* 387 Ill. 256; *South Chicago Coal and Dock Co.* v. *Commerce Com.* 365 Ill. 218.) An unreasonable and unlawful order of the commission will be set aside by the courts. (*Town of Sidney* v. *Wabash Railway Co.* 333 Ill. 126; *Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320.) Section 65 of the Public

Utilities Act (Ill. Rev. Stat. 1947, chap. 111⅔, par. 69,) requires the commission to make and enter findings of fact concerning the subject matter inquired into, and to enter its order based thereon. The commission must make findings of fact upon the principal issues of the case, and such findings must be sufficiently specific to enable the court to intelligently review the decisions of the commission and ascertain if the facts upon which the commission has based its order constitute a fair and reasonable basis for the same. (*Chicago, Rock Island and Pacific Railway Co.* v. *Commerce Com.* 346 Ill. 412.) If findings are made the facts may be re-examined in connection with the evidence to determine if they are substantially supported by the evidence. (*Chicago Railways Co.* v. *Commerce Com. ex rel. Chicago Motor Coach Co.* 336 Ill. 51.) The order of the commission should be set aside if the evidence in the record shows the order to be without substantial foundation. (*Commerce Com. ex rel. City of Bloomington* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.) The language of the act requires that the evidence be substantial. The Public Utilities Act, as well as its predecessor, has been upheld under the police power of the State. *Springfield Gas and Electric Co.* v. *City of Springfield,* 292 Ill. 236; *Alton Railroad Co.* v. *Commerce Com.* 382 Ill. 478; *Illinois Central Railroad Co.* v. *Commerce Com.* 397 Ill. 399.

Keeping these principles before us, the findings of the commission must be examined to determine whether they are reasonable and lawful, and the evidence must be examined to ascertain whether the order is supported by substantial evidence. The findings pertinent to the question under consideration may be summarized thus: Appellee owns, operates and maintains near the city of Decatur, and situated immediately east of the city limits of Decatur, the yards known as the East Decatur Yards, and as a part of which it maintains an office therein known as the East Decatur Yards

Office, at which office certain train crews and other employees report for work; that said office is located outside of the corporate limits of the city of Decatur, and is approximately seven tenths of a mile from the end of the bus line; and that in a twenty-four-hour period there was an average of 370 employees who reported to and from said office. It is then recited that the Decatur City Lines, Inc., furnishes daily bus transportation, but that it does not operate between 11:00 P.M. and 6:00 A.M. daily, and that there is no other public transportation service available between the city of Decatur and the East Decatur yards office. It finds the distance from the Wabash Railroad depot in the city of Decatur to the yard office is 2.7 miles, and that approximately one third of the employees report to the yard office at a time when there is no public transportation service available. There is also a finding that the failure of employees who operate the trains from the East Decatur yards to report for work in ample time would result in delays and interruptions in train service, and that said yards are a part of the outlying terminal of the appellee; and then concludes with a finding that the railroad company should provide a means of transportation to the East Decatur yards on a thirty-minute schedule for the round-trip transportation between 12:00 o'clock midnight and 5:30 o'clock A.M.

There is no evidence to support the finding that the East Decatur yards and the East Decatur yards office constitute a part of the outlying terminal of the appellee. While the evidence is confined largely to the tracks and yards in East Decatur, it also shows that the roundhouse where engines are repaired and serviced is located one and one-fourth miles to the west of the yard office, which would be within the city, since the terminus of the bus line at the city limits is within seven tenths of a mile of the yard office. In other words, there is nothing to show that the place where the yard office is located is not a part of the

general yards and terminal of the Wabash Railroad Company at the city of Decatur including its freight and passenger depot and the yard office and roundhouse.

The statute permits the Commerce Commission to enter such an order only where the railroad maintains outlying terminals. We take judicial notice of the fact that Decatur is a city of substantial size, since some of the witnesses live in the city, more than two miles from their work, and also many of them live more than two miles from the depot. The manner of transportation is not specified in the order, but the record shows that if it is by rail it would cost over $45,000 per year, and if it is by bus it would require an initial investment of $10,400, with an overhead expense of $6941 per year. And the order is further deficient in that it does not provide as to how the railroad shall be compensated for the additional expense, if at all, that is placed upon it by the order. If it is to be rendered without payment of fares, then there is a discrimination between the employees who pay bus fares, and those who ride free upon the conveyances required to be furnished by the railroad.

There is a finding that trains might be delayed because an employee does not arrive on time to perform his work, but there is no proof of a single instance in the past where this has occurred. Naturally, this result could follow whether an employee should become ill, injured or die, and this is not a result caused by the manner in which the railroad is operated, but in reality by the distance the employee has chosen to reside from his work. There is no evidence to support the finding that the starting point should be 2.7 miles from the yard office, nor any indication why the station should be a more convenient place for men to congregate at midnight, when there are no busses to reach the depot. In fact, it is inferable from the entire evidence that the station is rather an inconvenient place for men to reach at this hour of the night for general want of transportation.

We have examined the evidence with care and find no substantial foundation for this finding. One of the witnesses testified as to places where transportation was furnished voluntarily, but in each of these instances the yards or terminals had been relocated, and moved three and one-half miles beyond the city. Under the language of the act the railroad company cannot be required to furnish transportation to yards within the city, but it must be to an *outlying terminal,* which clearly infers that the terminal itself, *viz.,* the whole terminal, is located beyond the city, and not partly within and partly without the city. The order issued by the commission must not be vague and uncertain, and leave matters contained in it to conjecture or guesswork. In *Brotherhood of Locomotive Firemen and Enginemen* v. *New York Central Railroad Co.* 339 Ill. 201, we said: "It is not for this court to weigh the question of the simplicity of this order as it might appear to a member of the engineering profession. Unless it conforms to accepted judicial standards of clarity and definiteness it does not merit judicial sanction. This order does not conform to those standards." In *Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51, concerning the findings to be made by the Commerce Commission, we said: "Such findings must be specific enough to enable the court to review intelligently the decision of the commission and ascertain if the facts on which the commission has based its order afford a reasonable basis for it."

A good deal of discussion of counsel pertains to the constitutionality of the amendment of 1945 to section 32, but we do not believe it is necessary to decide this point for the reason we do not think any evidence adduced in this case brings it within the terms of the amendment. The act permits the commission to require railroad companies to provide necessary transportation for employees engaged in the operation of trains in getting to and from outlying

terminals when the commission finds such transportation is necessary.

There are elements in this act which must be established before the commission may order transportation: (1) There must be an outlying terminal; and (2) the commission must find that the transportation is necessary; and the necessity must be based upon substantial· evidence. As pointed out above, the commission recites that the failure of an employee to get to work might delay a train, but that, within itself, is no reason for requiring a railroad company to· furnish transportation for over two and one-half miles from a place from which the employee has not been accustomed to start. The necessity for the transportation should not be based upon the personal opinion of the commission but upon evidence, and upon that proposition there has been none offered.

It must be remembered that a railroad terminal is not simply the ending of a line, where there is a depot or yard office. A railroad terminal may be, and is, a general place 'for the receipt of passengers and freight, and for the making up and classification of trains, the repairing and outfitting of engines or other conveyances, and is generally a combination of a workshop where the trains are prepared for transportation, and where the men start their work, and does not alone mean the end of a single main-line track, where a train may stop for receiving freight or passengers, or for servicing the locomotive, or other means for hauling the load. Generally the office of the superintendent of the division of a railroad is located there, and the place from which orders for the going or coming of trains are to be dispatched and received.

This general understanding of the meaning of a terminal is not be found in any one decision, but may be derived from an examination of the series of cases which embrace different types of work carried on in what, for instance, is called a terminal. (*Chicago, Milwaukee & St. Paul Rail-*

*way Co.* v. *Kootenai Co.* 192 Pac. 562; *Interstate Commerce Com.* ·v. *New York, New Hampshire & Hartford Railroad Co.* 287 U.S. 178, 77 L. ed. 248; *Missouri, Kansas & Topeka Railway Co.* v. *Texas*, — Tex. ——, 275 S.W. 673; *City of Superior* v. *Allouez Bay Dock Co.* 166 Wis. 76, 164 N.W. 362; *Pennsylvania Railway Co.* v. *Marshall*, 132 N.Y.S. 41; *New York Central Railroad Co.* v. *Public Service Com.* 177 App. Div. 208; *Chicago and Northwestern Railway Co.* v. *Chicago Mechanics' Institute*, 239 Ill. 197.) We think the evidence is wholly insufficient to establish that there is an outlying terminal, a separate terminal from that of Decatur, or to establish any basis for the finding that such transportation is necessary.

When the act is examined it appears that it is not intended the personal convenience of a part of the employees for a part of the time is meant, but means a general necessity for transportation of all operating employees during all working hours, to conduct the railroad operations for the convenience of the general public, and not for a few individuals.

There is also evidence that there is pending before the Commerce Commission a petition to require the Decatur city bus lines to furnish transportation to the ·point four blocks from the yard office, where it operates during the remainder of the day.

For the foregoing reasons, we do not think it is necessary for us to pass upon the validity of the amendment of 1945 because, assuming it to be valid, the evidence wholly fails to establish a case which would authorize the exercise of the power granted therein. We do not pass upon the validity of a statute unless the proper decision of the case requires us to do so. *Village of Morgan Park* v. *Knopf*, 199 Ill. 444; *Ossey* v. *Retail Clerks' Union*, 326 Ill. 405.

We conclude that the proof of the essential elements to require transportation under the law of 1945 is not founded in substantial evidence. We find also that the order is in-

definite and incomplete in that the means and manner of transportation is not specified, or the charge or fare to be paid specified, nor is there any adequate finding based on evidence as to why the haul should begin over two and one-half miles from the yard office, when the said bus transportation operates within four blocks of the yard office.

We are of the opinion that the order of the commission is not based upon substantial evidence; that it is arbitrary and discriminatory, and unreasonable in its operation. The order of the circuit court of Macon County is affirmed.

*Order affirmed.*