(No. 32090.—

ILLINOIS CENTRAL RAILROAD COMPANY, Appellee, *vs.* THE ILLINOIS COMMERCE COMMISSION, Appellant.

*Opinion filed March 20, 1952.*

Ivan A. Elliott, Attorney General, of Springfield, (Milton Mallin, and Ellis Ames Ballard, of counsel,) for appellant.

Henry I. Green, of Urbana, and E. T. Horsley, and John W. Foster, both of Chicago, (J. H. Wright, C. A. Helsell, J. W. Freels, and H. J. Deany, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

On June 19, 1947, six of the railway employee brotherhoods filed a petition with the Illinois Commerce Commission praying for an order requiring the Illinois Central Railroad Company to provide and maintain adequate transportation daily, for its employees engaged in the operation

of trains, between its crew-board office located near its depot in the city of Champaign, and its outlying terminal facilities northeast of said city. After a series of hearings and rehearings the Commerce Commission, on February 28, 1950, entered an order directing the railroad company to provide 24-hour transportation service for its employees by means of a motor coach, upon a 30-minute round-trip schedule between the points requested, at a one-way fare of twenty cents for each passenger. A motion for rehearing was denied and the railroad company appealed to the circuit court of Champaign County, where the order of the Commerce Commission was reversed and set aside. Pursuant to section 69 of the Public Utilities Act, (Ill. Rev. Stat. 1949, chap. 111⅔, par. 73,) the Commerce Commission has perfected an appeal to this court.

Section 65 of the Public Utilities Act requires the Commerce Commission to make and render findings concerning the subject matter and facts inquired into and enter its order based thereon. (Ill. Rev. Stat. 1949, chap. 111⅔, par. 69.) Such findings of fact must be sufficiently specific to enable the courts to intelligently review the orders of the Commerce Commission, and to ascertain if the facts upon which such orders are based constitute a fair and reasonable basis for the decision of the commission. (*Chicago, Rock Island and Pacific Railway Co. v. Commerce Com.* 346 Ill. 412.) We have held in a number of cases that the purpose of a judicial review of an order of the commission is to keep it within the jurisdictional bounds prescribed by law, so as to guard against the violation of any rights guaranteed by the constitution. (*Illinois Central Railroad Co. v. Commerce Com,* 387 Ill. 256; *South Chicago Coal and Dock Co. v. Commerce Com.* 365 Ill. 218.) The courts may re-examine the facts and set aside an order of the commission, if the evidence in the record shows the order to be without substantial foundation. *Chicago Railway Co. v. Commerce Com. ex rel. Chi-*

*cago Motor Coach Co.* 336 Ill. 51; *Commerce Com. ex rel. City of Bloomington* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.

We proceed, therefore, to a consideration of the order of the Commerce Commission, and the findings of fact upon which it is based. The order recites, after certain formal and jurisdictional statements, that the petition was filed pursuant to the 1945 amendment to section 32 of the Public Utilities Act, which authorizes the commission to require railroad companies to provide the necessary transportation for employees engaged in the operation of trains, in getting to and from outlying terminals, when the commission finds such transportation necessary. After a general recital of evidentiary facts, specific findings were made which may be summarized as follows: The Illinois Central Railroad Company is the owner of a railroad line which extends in a general north-and-south direction through the city of Champaign; the railroad company operates and maintains certain outlying terminal facilities, including a freight yard, yard office and roundhouse, approximately two and one-third to three miles northeast of its crew-board office, which is near the passenger depot in downtown Champaign; approximately 275 train crewmen either report for work, or are relieved from duty, at the yard office or roundhouse during an average 24-hour day; the railroad company uses a caller system to notify its train and engine crews of the time trains, on which they are employed, are scheduled to depart from the freight yards; the only public transportation between the crew-board office in the business district of the city and the yard office and roundhouse, located just outside the city limits, is provided by three privately owned taxicabs, which number is at times reduced to one, and on occasions no public transportation of any kind is available; the public transportation is inadequate and detrimental to the safety, health, comfort and convenience of the railroad employees required

to report for and be relieved from their duties at the yard office and roundhouse; the roundhouse, yard office and crew-board office constitute a part of an outlying terminal of the railroad; the transportation of its employees by the railroad company to and from the crew-board office and the yard office and roundhouse is necessary and required in the public interest, and necessary for the transportation of all operating employees to and from the outlying terminals during all working hours to conduct the railroad operations for the convenience of the general public. The concluding finding was that the railroad company should provide 24-hour transportation service for all employees by means of a motor coach operating on a 30-minute round-trip schedule between the crew-board office and the yard office and roundhouse, at a fare of twenty cents per ride.

The order of the Commerce Commission, based on these findings, was reversed and set aside by the circuit court on the grounds that it was unreasonable and unlawful for the following reasons: (1) The findings made were insufficient, were not supported by substantial evidence, so that an order based on such findings was arbitrary and unreasonable; (2) the 1945 amendment to section 32 of the Public Utilities Act is unconstitutional in that it violates the equal-protection and due-process clauses of our State and Federal constitutions; and (3) the order is void as repugnant to the due-process clauses of both our State and Federal constitutions. The Commerce Commission assigns error on each of the grounds recited in the order of the circuit court and, in addition, asserts that the court erred in not giving proper weight to the findings, and in substituting its own judgment for that of the commission.

This court recently had occasion to consider an order issued by the Commerce Commission pursuant to the 1945 amendment to section 32 of the Public Utilities Act. In

the case of *Wabash Railroad Co.* v. *Order of Railway Conductors,* 402 Ill. 548, we announced that two elements must be established before the commission is authorized to order transportation under this amendment to the act, *viz.,* (1) There must be an outlying terminal; and (2) the commission must find that the transportation is necessary, and the necessity must be based upon substantial evidence. We described a railroad terminal generally as a place for the receipt of passengers and freight, and for the making up and classification of trains, the repairing and outfittting of engines or other conveyances, a combination, generally, of a workshop where the trains are prepared for transportation, and where the men start their work, where the office of the superintendent of the division is located, and the place from which orders for the going or coming of trains are to be dispatched and received. In the instant case the commission made a specific finding of fact that the roundhouse, yard office and crew-board office constituted a part of an outlying terminal of the railroad. The evidence discloses that trains are made up and classified, engines are repaired, outfitted and prepared for transportation, and operating employees engaged in freight service start their work at the yards and enginehouse outside the north boundary limits of the city. On the other hand, the depot for receiving passengers, the office for listing, dispatching, and calling crews for the operation of all scheduled train service, and the district superintendent's office are all situated in the city of Champaign, near the downtown business district. The finding of the commission that the roundhouse, yard office, and crew-board office constitute an outlying terminal embraces within its scope two points located beyond the city and one point in the downtown business area, and ignores other essential elements of the railroad terminal at Champaign which are disclosed by the evidence. In *Wabash Railway Co.* v. *Order of Rail-*

*way Conductors*, 402 Ill. 548, we construed the act to mean that a railroad company cannot be required to furnish transportation to any but an outlying terminal, and stated that the language of the act clearly infers that the terminal itself, *viz.*, the whole terminal, must be located beyond the city, and not partly within and partly without the city. The evidence is wholly insufficient to establish that there is an outlying terminal located beyond the city, within the meaning of the act, or any separate terminal distinct from that partly located in the downtown business area of the city of Champaign.

The finding that the transportation by the railroad company of all operating employees to and from the outlying terminals during all working hours is necessary to conduct the railroad operations for the convenience of the general public is not based upon substantial evidence. Approximately 328 trainmen, enginemen and yardmen are employed in the district operating out of Champaign. Of this number, 262 reside in the city of Champaign and 36 in the adjoining city of Urbana. A map showing the dispersal of these employees reveals that their places of abode are widely scattered throughout the city, and in many instances are just as close to the yard office and roundhouse as they are to the crew-board office, which was designated as the starting point for the motorbus transportation ordered to those destinations. The regular public bus service in Champaign-Urbana is discontinued at midnight. A large number of trains are scheduled for departure at irregular intervals after midnight, during the hours when public bus service is not available. There is no evidence that establishing a motorbus service starting from the crew-board office in downtown Chaimpaign would be at a convenient point for congregation of a large number of resident employees, who live at a distance from that point, during the hours when no public transportation is available.

An average of 138 operating crewmen are listed for duty on the crew dispatchers' board at Champaign during each 24-hour period. They are not required to report at the caller's office but may report for duty, at the hour scheduled, either at the yard office or roundhouse north of the city, depending on whether they are trainmen or enginemen. The evidence shows that three privately operated taxicabs, engaged exclusively in transporting railroad employees, haul approximately 49 of these 138 crewmen from their respective residences to work at the north yards or roundhouse; that about 14 of these men will have availed themselves of sleeping quarters provided at the north yards and will already be near their place of work; and that the remaining 75 men are transported by the taxicab service from the downtown crew-board office to the north yards or the roundhouse. It is clear from the evidence that, while the crew-board office might be a convenient starting point for a part of the operating employees, it would be equally inconvenient to a substantial number of such employees, some of whom reside as much as three miles from the crew-board office. Operating employees engaged in passenger service testified that they used transportation to the yard office and roundhouse only when called for freight service. The establishing of the transportation motorbus service from near the passenger depot to the freight yard office and engine house was neither convenient nor necessary for employees operating passenger trains out of the Champaign terminal. In our decision in the *Wabash Railway Co. case* we pointed out that it was not intended by the act that the personal convenience of a part of the employees for a part of the time should control, but that there must appear to be a general necessity for transportation, by the railroad company, of all its operating employees, during all working hours, in order to conduct the railroad operations for the convenience of the general public. The findings of the commission that

such a general necessity exists for the transportation of all operating employees, between the points designated, is not supported by substantial evidence.

While a number of employees testified that the available transportation facilities to the north yards and roundhouse were inadequate, unsatisfactory and inconvenient, we observe that they invariably were able to report for duty and that delay in train movements on account of tardiness of members of the operating crews amounted to only one half of one per cent of the total number of trains dispatched. We do not consider this percentage in delayed train movements a sufficient variation from normal as to create a necessity for special transportation facilities on the ground of inconvenience to the general public.

We conclude that the proof fails to establish the existence of an outlying terminal within the meaning of section 32 of the Public Utilities Act, as amended in 1945, and that the finding of the commission, that the required transportation of all its operating employees by the railroad company is necessary, is not based upon substantial evidence. It follows that the order of the commission is without substantial foundation, is unlawful and unreasonable and was properly vacated and set aside by the order of the circuit court. *Town of Sidney* v. *Wabash Railway Co.* 333 Ill. 126.

The conclusion we have reached makes it wholly unnecessary to a proper decision of the case that we consider the constitutional questions raised by the assignment of errors. It is the established rule that a constitutional question will not be considered by this court if the case can be decided without so doing. *People* v. *Metcoff*, 392 Ill. 418; *Durkin* v. *Hey*, 376 Ill. 292.

For the above reasons, we have concluded that the judgment of the circuit court of Champaign County should be, and the same is, hereby affirmed.

*Judgment affirmed.*