(No. 33430.—

CENTERVILLE TOWNSHIP *et al.,* Appellees, *vs.* THE ILLINOIS COMMERCE COMMISSION, Appellant.

*Opinion filed February 16, 1955.*

LATHAM CASTLE, Attorney General, of Springfield, (HARRY R. BEGLEY, and JOHN L. ROACH, of counsel,) for appellant.

JOHN R. SPRAGUE, of Belleville, for appellees Centerville Township *et al.;* and WALKER & WILLIAMS, of East St. Louis, for appellee Guy A. Thompson, Trustee.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from an order entered by the circuit court of St. Clair County vacating an order of the Illinois Commerce Commission, prescribing certain grade crossing protection at the intersection of the Missouri Pacific Railroad Company tracks and Jerome Lane in Centerville Township, St. Clair County.

A petition was filed on December 8, 1951, with the commission which alleged that a hazardous condition existed at the grade crossing of Jerome Lane and the tracks of the Missouri Pacific Railroad Company, in an unincorported area known as Maplewood, Centerville Township, St. Clair County. The petition stated that Maplewood was a thickly populated community and Jerome Lane a.main thoroughfare connecting Maplewood with other populous areas; that there were three public schools located on Jerome Lane near its intersection with the said railroad right of way; that there had been accidents at said crossing; that the crossing was extra-hazardous; and that no measures had been taken to protect the public.

After notice the cause was set for hearing, and appearances were entered for Howard Hayden, who filed the petition, School District No. 187, the Missouri Pacific Railroad Company, Centerville Township, Frank Bauer, highway commissioner of Centerville Township, and St. Clair County. After hearings were held, the commission entered an order which directed the railroad to install flashing light signals and short-arm gates at this crossing, at an estimated cost of $13,680, to be paid for equally by the railroad and Centerville Township. The railroad was ordered to bear the entire expense of maintenance.

Centerville Township and Frank Bauer, highway commissioner, filed a petition for rehearing which alleged, in substance, as follows: (1) that the crossing was not extra-

hazardous within the meaning of section 58 of the Public Utilities Act; (2) that in the interest of public safety it was not necessary that flashing light signals and short-arm gates be installed; (3) that the installation of flashing light signals alone would be sufficient to give adequate protection; (4) that the equal apportioning of equipment and installation costs between Centerville Township and the railroad was contrary to the law and the evidence; and (5) that Centerville Township was without funds to pay any part of the costs involved in connection with the installation of flashing light signals and short-arm gates. The petition for rehearing was denied by the commission.

An appeal was taken to the circuit court of St. Clair County, which vacated the order of the commission and remanded the cause to the commission with the "recommendation" that "the interest of the Public safety would be served by adequate and appropriate protective facilities being installed consisting of flashing light signals to operate automatically at said crossing instead of the flashing light signals and short-arm gates as outlined in paragraph 10 of the Order of the Illinois Commerce Commission dated May 6, 1952."

The commission has appealed to this court, contending that the circuit court erred in vacating its order because said order was within the commission's jurisdiction and not against the manifest weight of the evidence.

By statute the petition for rehearing must set out all errors complained of, and the scope of judicial review is limited to matters therein specified. Ill. Rev. Stat. 1953, chap. 111⅔, par. 71; *City of Granite City* v. *Commerce Com.* 407 Ill. 245, 250; *Chicago Junction Railway Co.* v. *Commerce Com.* 412 Ill. 579, 588.

As aforesaid, it was urged in the petition for rehearing that the crossing was not extra-hazardous within the meaning of section 58 of the Public Utilities Act. In addition, it was alleged that flashing light signals without short-arm

gates would be sufficient to give adequate protection to the public.

Section 58 of the Public Utilities Act (Ill. Rev. Stat. 1953, chap. 111⅔, par. 62,) empowers the Illinois Commerce Commission to order the reconstruction, alteration, relocation or improvement of any crossing whenever the commission finds, after a hearing, that such reconstruction or improvement is required in the interest of public safety.

The commission here made eight specific findings concerning the locality, traffic, and conditions surrounding the crossing and concluded that "the installation, maintenance and operation of said automatic flashing light signals and short-arm gates is required in the interest of public safety."

The evidence discloses that Jerome Lane is a black-top road maintained by Centerville Township. It runs in a general easterly and westerly direction and is the main thoroughfare connecting the villages of Cahokia and Monsanto with the unincorporated areas of Centerville Township. The double tracks of the Missouri Pacific Railroad Company run in a general northerly and southerly direction and intersect with Jerome Lane at right angles in an unincorporated community known as Maplewood on the outskirts of East St. Louis in Centerville Township. At the present time there is no protection at said crossing except standard cross-buck signs indicating a railroad.

Maplewood is a growing community with nearly 1200 people, and including the immediately surrounding area approximates 3000. A considerable amount of traffic originates out of Centerville Township using Jerome Lane for the purpose of going into the industrial areas of Monsanto and Union Electric and to Belleville, Fairmont City and French Village. The road also connects with State Route 3 which leads into southern Illinois.

There are two schools on Jerome Lane near the crossing. The Maplewood grade school is immediately adjacent to the tracks, and a new high school is located on the

opposite side of the tracks at a distance of three 'quarters of a mile. It was estimated that approximately 60 to 75 students cross the tracks on foot going to and from the grade school, and 25 to 40 busses, carrying more than 400 students, cross the tracks each school day.

A traffic count, taken for the week of December 4 through December 10, 1951, showed a high of 1710 and a low of 1125 vehicular crossings made during a twenty-four hour period. The average number of trains passing daily over the crossing is 54, 27 being north bound and 27 south bound. In addition to the trains of the Missouri Pacific Railroad Company, there are transfer movements involving trains of the Terminal Railroad, the Alton and Southern, the Illinois Central and the Cotton Belt.

In addition to the foregoing factors, the crossing was also described as hazardous because of poor visibility. While there are no obstructions to the view in the northeast quadrant of the intersection, structures along the northwest quadrant obstruct vision up to a distance of 75 feet from the tracks. The grade school, located in the southwest quadrant with only a road paralleling the railroad between the school building and the right of way, obstructs the view when approaching from the west. This school building extends for 199 feet along Jerome Lane. Foliage, trees and a hedge, as well as three houses in the southeast quadrant make viewing of a train difficult. Wright Avenue, which parallels the railroad right of way, complicates traffic problems with its intersection of Jerome Lane on the west side of the railroad crossing.

The railroad is on a higher level than the highway by about four feet, resulting in a slight ascending grade immediately preceding the approach to the tracks from either direction. Because of this higher level it was said that headlights of an automobile can shine under a boxcar and give the appearance that there is no train on the crossing.

There was also testimony that there are two airports in the immediate vicinity, and the noise from low-flying planes makes it difficult to hear a train whistle.

There have been several accidents at the crossing during the last few years, and there have been many near accidents.

All seven witnesses who appeared before the commission testified that additional protection was needed at this crossing. Moreover, all three witnesses who testified as to the type of protection that was necessary favored flashing lights with short-arm gates. These witnesses were Frank Bauer, one of the appellees, L. W. Marshall, supervisor, and engineer in the department of roads and bridges of St. Clair County, and C. T. Marak, assistant signal engineer of the Missouri Pacific Railroad Company.

It was estimated that the initial cost of installing automatic short-arm gates and flashing lights would be $13,680 with an annual maintenance expense of $420 per year.

The evidence is thus undisputed that this crossing was extra-hazardous and that additional protection was needed, and all parties testifying to the type of protection which was necessary favored flashing lights with short-arm gates. Therefore, the order of the commission directing that said equipment be installed is clearly not against the manifest weight of the evidence. Ill. Rev. Stat. 1953, chap. 111⅔, par. 72.

It was also urged in the petition for rehearing that the apportioning of the equipment and installation costs equally between Centerville Township and the railroad was contrary to the law and evidence. It was further alleged that Centerville Township was without funds to pay said costs.

The apportionment of cost by the commission is authorized specifically by section 58 of the Public Utilities Act, and we do not believe the commission's order in this regard is against the manifest weight of the evidence. Similar

apportionments have been sustained by this court: *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301, (40% to the county and 60% to the railroad); *Chicago Junction Railway Co.* v. *Commerce Com.* 412 Ill. 579, (65% to the city and 35% to the railroad); *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337, (20% to the county, 20% to the town, and 60% to the railroad).

As regards the argument that Centerville Township is without funds to pay any part of the costs involved in this installation, we said in *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337, 344: "When the State acts in cases where the exercise of its powers are necessary, as where the safety of the general public demands the action, it becomes the duty of the local authorities to provide means for complying with the order * * *." Similarly, it has been held that the financial condition of the railroad is of no consequence in determining whether or not public safety requires a change in the crossing protection. *Commerce Com. ex rel. City of Bloomington* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.

Actually, there is evidence that Centerville Township was in a position to defray the expense. On the basis of the apportioned cost, Centerville Township is obligated to pay $6840. The railroad likewise must pay $6840 as its share in the original installation, but it must also bear the maintenance expense of $420 per year for the next fifteen years, the estimated life of the installation. Centerville Township in 1951 had an assessed valuation of $92,323,215. Calculations which were made for the record showed that there was approximately $16,500 available which could be used for this purpose.

We conclude, therefore, that the order of the commission was not against the manifest weight of the evidence and should have been affirmed.

Other matters not specified in the petition for rehearing have been urged in brief and argument. However, as aforesaid, section 67 of the Public Utilities Act provides that no party on appeal shall urge or rely upon any ground not set forth in the application for rehearing. We stated in *City of Granite City* v. *Commerce Com.* 407 Ill. 245, at page 250: "The purpose of requiring the matters to be raised in the petition for rehearing is to inform the commission and the opposing parties wherein mistakes of law and fact were made in the order. A general allegation could not inform the commission or the opposing party of one mistake of law as opposed to another. The language in the act * * * is sufficiently specific to require in unequivocal terms the propositions relied upon by the person petitioning for the rehearing."

The judgment of the circuit court of St. Clair County is reversed, and the order of the Illinois Commerce Commission is confirmed.

*Circuit court reversed;*
*order of commission confirmed.*