THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Wabash Railroad Company *et al.* Appellees, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed June 22, 1916.*

1. PUBLIC UTILITIES—*when order of commission and compliance therewith do not constitute a contract.* The fact that three railroad companies have for more than twenty years complied with an order entered by the Railroad and Warehouse Commission, without the consent or agreement of the companies, requiring them to install and maintain an interlocking plant and requiring each company to pay one-third of the cost of the construction, maintenance and operation, does not make the order and acceptance a contract which will bind the State Public Utilities Commission to fix the same proportion of cost when ordering the installation of a new interlocking system.

2. SAME—*Public Utilities Commission has power to set aside orders of Railroad and Warehouse Commission.* While the State Public Utilities Commission has only such powers as are derived from the statute, yet it has power, under sections 50 and 67 of the Public Utilities act, when authorized by the circumstances, to order new structures to be erected and fix the proportion of the cost to be borne by the utilities affected, and may, after notice and a hearing, amend or rescind former orders affecting public utilities, including orders of the Railroad and Warehouse Commission.

3. SAME—*commission cannot change conditions fixed by legislature.* The legislature by the Crossings act of 1889, as amended in 1907, has conclusively determined what company shall bear the expense of installing any interlocking device or other safety appliance and the cost of the maintenance thereof, and the State Public Utilities Commission has no power to change the condition fixed by the legislature.

4. SAME—*when one railroad must bear the entire expense of crossing under act of 1889.* In case one railroad desires to cross another where there is no interlocking device and the crossing necessitates an interlocking system the act of 1889 applies, and the expense of constructing and maintaining the interlocking system must be borne by the company applying for the right to cross; but where there is already an interlocking plant which must be enlarged for the accommodation of the new crossing, the statute is satisfied by requiring the company obtaining the crossing to bear the additional expense occasioned by its coming into the interlocking device.

5. SAME—*what order for distribution of cost of construction and maintenance will be reasonable.*  Where a new interlocking plant must be constructed for the use of three steam railroads and an electric railway, (which latter has not acquired crossing rights,) it is reasonable to charge the electric company one-fourth of the cost of construction and maintenance and divide the other three-fourths of such cost among the three railroad companies on the unit basis,—that is, in the proportion which the number of inter-locking units required for each company's tracks bears to the total number of units,—and to divide the cost of operation equally among the four companies.

6. SAME—*when an electric company does not acquire crossing rights.*  An electric company cannot acquire crossing rights by dis-obeying the orders of the Railroad and Warehouse Commission with reference to the crossing, and by continuing to use, with the sufferance of the railroads crossed, a temporary grade crossing au-thorized by the commission.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. W. BURTON, Judge, presiding.

JOHN G. DRENNAN, (BLEWETT LEE, W. S. HORTON, and GRAHAM & GRAHAM, of counsel,) for appellant.

WINSTON, PAYNE, STRAWN & SHAW, (SILAS H. STRAWN, and GEORGE A. KELLY, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In 1891 the tracks of the Chicago and Alton Railroad Company, the Illinois Central Railroad Company and the Wabash Railroad Company crossed each other adjoining Pontiac, at a place then known as Paducah Junction.  The Chicago and Alton Railroad Company petitioned the Rail-road and Warehouse Commission to compel the other com-panies to join in an interlocking device at the crossing. The commission on December 10, 1891, after a hearing of the different companies, ordered an interlocking plant con-structed consisting of thirty-six working levers operated by manual power, and ordered that each of the three com-

panies should pay one-third of the original cost of construction and of the expense of future maintenance and operation. The interlocking plant was constructed in compliance with the order and was completed and put in operation in the early part of 1892, and continued in operation and protecting the crossings of the three roads more than twenty-three years. In 1905 the Bloomington, Pontiac and Joliet Electric Railway Company desired to cross the tracks of the Wabash and Central companies with its interurban railway, and proceedings were had before the commission which terminated in an order on April 11, 1905, providing that the Central and Wabash companies should raise their tracks a few feet and the electric railway should go under them by means of a subway. It was ordered, however, that for a period of ninety days the electric company should, without expense to or liability on the part of the other companies, have a right to install temporary crossings over their tracks at grade but the temporary crossings should be removed within ninety days, and if not so removed the Central company and Wabash company might, upon twenty-four hours' notice to the electric company, tear up and remove the same, unless in the meantime the commission should make an order to the contrary. The electric company was required to furnish, install and maintain the temporary crossings, and crossing frogs, switches and appurtenances, with proper derailing devices. It turned out that the order for the subway could not be carried out on account of the lack of drainage, as the subway track would frequently be covered with water, but no order was made by the commission respecting the temporary crossings and the electric company continued to use them by sufferance of the Wabash and Central companies. In 1909 the electric company applied to the commission for a modification of the order of 1905 and for a permanent grade crossing, and that the commission should prescribe the place where and the manner in which the track of the electric com-

pany should cross the other tracks and the conditions upon which the electric company should enter into the interlocking plant. The Chicago and Alton Railroad Company, which maintained and operated the interlocking device, then became a party to the proceeding. On October 20, 1909, the commission set aside the order of April 11, 1905, and made an order that the electric company should have a right to cross at grade the main track and side-track of the Central company and the main track and Y-track of the Wabash company after having secured the necessary right of way, as provided by law. The order specified the point of crossing as indicated on a plan in the office of the commission and provided that the crossing should be interlocked in connection with the other tracks; that the electric company should make, at its sole expense, such changes and additions to the interlocking system as should be satisfactory to the commission and install and maintain a proper trolley-guard, and that it should be charged thereafter with one-fourth of the cost of operation and maintenance. The electric company was required to complete the entire work by February 1, 1910, and again the electric company did nothing to comply with the order. The commission finally notified the Alton company that the interlocking plant was so worn out that the commission would not allow further substantial repairs to be made, and ordered it taken out of service and not to be used again until a new interlocking plant should be installed. In 1914 the Alton company presented to the State Public Utilities Commission, successor to the Railroad and Warehouse Commission, for approval, plans for constructing an electric interlocking plant to take the place of the old mechanical plant. The plans so presented did not include the electric company, and the utilities commission on July 24, 1914, gave notice to all the companies to appear and show cause why the order of 1909 had not been complied with. On October 6, 1914, the electric company filed its petition that it should not be required

to enter into the interlocking system. On October 19, 1914, the Alton company filed its answer, alleging that an entirely new interlocking plant was necessary, and that the cost of construction, operation and maintenance should be divided among the companies on the unit basis of division. On October 26, 1914, the Central company answered, admitting the necessity of a new interlocking plant but denying that it was necessary to set aside the previous orders. Hearings were had, and on December 12, 1914, the commission vacated and set aside the orders of 1891 and 1909. An order was then entered that a new modern electric interlocking device, consisting of an eighty-lever frame, with sixty-eight working levers, should be installed; that the electric company should change the location of its crossings, pay the cost of constructing the crossing frogs necessary to cross the tracks of the Central and Wabash roads, and also bear the expense of such track changes as might be necessary in the tracks of the Central and Wabash; that the new interlocking plant should embrace all the crossings formed by the tracks; that the four companies should each be required to bear such proportion of the total cost of construction and maintenance of the new plant as the number of interlocking units required for the tracks of the respective roads bore to the total number of interlocking units, and that the cost of the subsequent operation of the new interlocking plant should be borne equally by the four companies. The Central company appealed to the circuit court of Sangamon county, where the order was affirmed, and a further appeal to this court was allowed and perfected.

One objection to the order appealed from is based on the ground that the order of 1891 for the construction of a mechanical interlocking system, by which each of the three companies was required to pay one-third of the cost of construction, maintenance and operation, having taken effect and been accepted and acted upon for over twenty-three years, had the force and effect of a contract and fixed

the relative share of the cost of the new plant to be paid by each company. The order not having been entered by consent or agreement of the parties but by the judgment of the Railroad and Warehouse Commission did not contain any element of a contract between the companies or between the commission and either company and the compliance with the order did not establish it as a contract. There was no binding obligation upon the utilities commission, under new and changed conditions after the plant was worn out and a new and different plant was required, to make the same order respecting the share to be paid by each company. The judgment of the utilities commission cannot be set aside because its conclusion was different from that of its predecessor, reached twenty-three years before.

The utilities commission derives its power only from the statute and has no authority except such as is expressly conferred upon it, and that being so, it is contended that the order of the commission setting aside the orders of 1891 and 1909 is void for want of authority. The State Public Utilities Commission is the successor of the Railroad and Warehouse Commission, performing the same functions and with the same authority, and section 50 of the act creating it authorizes it, if a new structure or structures ought to be erected to promote the security or convenience of employees or the public or to secure adequate service or facilities, to order the structure or structures erected, and if the utilities affected shall fail to agree on the proportion or division of the cost which each shall bear, the commission shall have authority to fix the proportion. Section 67 authorizes the commission, upon notice to any utility affected and after opportunity to be heard, to rescind, alter or amend any rule, regulation, order or decision made by it, and was evidently intended to reach orders made by its predecessor in the exercise of the same functions. The commission therefore had statutory authority for setting aside the orders of 1891 and 1909 and making a new or-

der, and the remaining question is whether the new order was justified under the law.

Sections 1 and 2 of the act in relation to the crossing of one railway by another and to prevent danger to life and property from grade crossings, in force July 1, 1889, was amended in 1907. (Laws of 1907, p. 475.) As amended, section 1 provides that any railroad company desiring to cross with its track or tracks the main track of another railroad company shall obtain permission from the Railroad and Warehouse Commission, and the commission shall give a decision prescribing the place where and the manner in which the crossing shall be made, but the compensation to be paid for property for the crossing, and damages resulting therefrom, shall be determined in the manner prescribed by law in case the parties shall fail to agree. Section 2 provides that the railroad company seeking a crossing shall in all cases bear the entire expense of the construction of the crossing, together with the cost of installing such interlocking or other safety appliance as shall be required and the cost of the maintenance thereof. By that act the General Assembly determined conclusively what company should bear the expense of installing any interlocking or other safety appliance and the cost of the maintenance thereof and put that matter beyond the control of the commission. It was not within the power of the utilities commission, as successor of the Railroad and Warehouse Commission, to change any condition fixed by the General Assembly. In the order of 1909 due regard was given to the statute by requiring the electric company to bear the expense of such changes, enlargements and additions to the interlocking system as should be satisfactory to the commission and to be charged thereafter with one-fourth of the cost of operation and maintenance. If one company seeks to cross the tracks of another where there is no interlocking device and one is required it must bear the whole expense, but, manifestly, if there is already an interlocking

plant, as there was in this case, which must be enlarged for the accommodation of the new crossing, the statute is satisfied by requiring the company obtaining the crossing to bear the additional expense occasioned by its coming into the interlocking device. The new order did not change the proportion of the cost of operation to be borne by the electric company but it did materially change and diminish the share of the cost of construction and maintenance to be paid by the electric company. The Central company was satisfied with the order of 1909, and while it contends that the commission had no right to change that order, it has no complaint so far as the same thing is accomplished by the new order. The suggestion that all four of the companies had crossing rights cannot be adopted and that suggestion must have been acted upon by the commission. The commission at first provided for a subway with a temporary grade crossing for ninety days, which the other companies had a right to tear up and remove at the end of that period, and some years afterward the commission provided for a grade crossing but the order was never complied with. The grade crossing was used by mere sufferance, and the electric company could not better its position by failing to obey the order of the commission. The electric company had not secured any crossing when the present order was made, and the statute which controls the action of the commission required it to bear the additional expense on account of its coming into the interlocking device and making use of it, and that expense was not to be determined by the number of interlocking units required by the electric company in the use of the plant. The change as to the electric company was not justified by law.

As between the Central company and the Alton and Wabash companies the order required each to bear that proportion of the cost which the number of interlocking units required for its track bore to the total number of interlocking units, and the result of the order was to make the

Central pay more than either the Alton or Wabash although its business at that point is of less importance than that of the Alton. The Alton company in twenty-four hours in October, 1914, ran twenty-seven trains through the device, the Central seven and the Wabash six; but the Central does a large amount of switching operations at that place requiring much greater use of the system than any of the other roads, so that during the same twenty-four hours the number of lever operations was 80 for the Alton, 129 for the Central and 43 for the Wabash. The testimony of signal engineers at the hearing was that the unit basis of division for construction and maintenance is fair and just and is generally so recognized among railroad companies. The evidence was that the plan adopted by the commission was the most equitable for dividing the expense of construction and maintenance, and in view of the evidence the order cannot be said to be unreasonable in respect to the division of three-fourths of the cost of construction and maintenance. The cost of operating the interlocking system was adjudged equally against the four roads upon the ground that the same attendance would be required and no expense would be added on account of the more frequent use by the Central, and although the Central will make more use of the device than either of the other companies it will pay no greater share of the cost of operation.

There was notice and a hearing with a fair opportunity to present evidence, and a record was kept of the proceedings and the testimony taken down. The order was not based on an *ex parte* examination or an examination by the commission, and the law was not violated as in the case of *Farmers' Elevator Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 567.

The law required the electric company seeking a crossing to bear the entire expense of the increased construction and maintenance on account of securing the crossing, which would be one-fourth, and the evidence would justify an

order apportioning the remainder as directed by the commission. The order required each of the companies, after completion of the plant, to bear one-fourth the cost of operation, and in that respect the order conformed to the law.

The judgment of the circuit court and order of the commission are reversed.  *Judgment and order reversed.*