(No. 40663.—⬛⬛⬛⬛⬛)

Preston Utilities Corporation, Appellant, *vs.* Illinois Commerce Commission, Appellee.

*Opinion filed March 28, 1968.—Rehearing denied May 27, 1968.*

Robert J. Downing, William M. Ward, and Devin M. Forde, all of Chicago, (Raskin, Downing & Dammann, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, (Edward G. Finnegan, Special Assistant Attorney General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The appellant, Preston Utilities Corporation, furnishes water and sewer services to certain unincorporated subdivisions in Will County. On December 29, 1964, it petitioned the Illinois Commerce Commission for a general rate increase. The Commission's order of November 22, 1965, approved an increase which was not as large as that requested. The appellant's petition for rehearing was granted, and on May 25, 1966, the Commission added to and altered certain of its original findings, but adhered to the rates it had established. The circuit court of Will County affirmed, and an appeal has been taken directly to this court pursuant to Rule 302. Ill. Rev. Stat. 1967, chap. 110A, par. 302.

Preston Management Co., a real-estate development firm, built the sewer and water facilities and transferred title to them and to the homes it constructed to a subsidiary, Preston Homes, Inc., which paid an undisclosed amount for the utility properties. On April 5, 1955, the Commission approved the transfer of these same water and sewer facilities from Preston Homes to Preston Service Co., another subsidiary of Preston Management, for 3,990 shares of $100 par value stock in Preston Service Co. The Commission's approval also ordered Preston Service "to obtain from the seller * * * such portion of the books of accounts and records of every kind and character (or certified copy thereof) as pertain to the cost of the property herein authorized to be acquired by the petitioner * * * [and to] make further provision for the preservation of such books and records for such length of time as required by the general orders and regulations of this Commission." The Commission further stated that "[n]othing in this order shall be construed as evidence or a finding of the original cost or fair value of the properties involved herein in any rate proceeding that may at any time come before this Commission."

On October 29, 1958, the Commission approved the sale of Preston Service Co.'s facilities for $90,000 to the appellant, Preston Utilities Corporation, which is not affiliated with the predecessor companies within the meaning of section 8a of the Public Utilities Act. (Ill. Rev. Stat. 1967, chap. 111⅔, par. 8a.) The appellant was ordered to procure and retain the same records that Preston Service had been required to procure and retain when it acquired the facilities in 1955, and the Commission's order again stated that nothing it contained was to be construed as "a finding of value of the water property or sewer property * * * in any rate proceeding before this Commission." The order found, however, that the depreciated book value of the utility plant, "based on construction cost," was $369,074. The $281,223.41 difference, after minor adjustments, between the $90,000 purchase price and the depreciated book value appeared on appellant's balance sheet of December 31, 1965, as "miscellaneous paid-in capital."

After it acquired the utility plant, the appellant constructed additional facilities, and in its first rate-fixing order, entered November 22, 1965, the Commission found that, as of September 30, 1964, the "original cost" less depreciation of appellant's utility properties was $436,871. The Commission again qualified this finding by stating that it was not making any finding "relative to the existence or amount of Contributions in Aid of Construction, and such finding is without prejudice to any future determination of such Contributions in Aid of Construction as may hereafter be made." The order established a rate schedule that would "result in utility operating income of approximately $16,900, which amount will provide a rate of return of 3.87 per cent on the net original cost of respondent's [appellant's] utility plant * * *."

After the Commission granted appellant's petition for rehearing, its chief accountant requested that appellant furnish certain specific information relevant to

an accurate determination of the "original cost" of the utility plant. The Commission's Uniform System of Accounts for Water Utilities defines "original cost" as "the cost of such property to the person first devoting it to public service." The request stated that in the Commission's opinion "the best evidence that can be produced to answer our questions would be the general ledger, journal entries and income tax returns for Preston Homes, Inc., Preston Management Company and Preston Service Company from the date the land was acquired for Preston and other subdivisions to the date of the sale of the water and sewer facilities to Preston Utilities Corporation." The appellant did not produce the requested records, and at the hearing its representatives testified that they did not have access to them.

The Commission's second order, entered May 25, 1966, made the following additional findings: (1) its previous authorization of the 1955 and 1958 transfers, which ordered the procurement and preservation of certain records of appellant's predecessors relating to original cost, were not complied with; (2) no evidence had been introduced to demonstrate which company first devoted the utility facilities to public service; (3) records necessary to determine original cost were not produced by the appellant; (4) "it is the obligation of Respondent [appellant] to produce evidence to determine the original cost of its property;" and (5) the $281,223.41 carried in appellant's "Miscellaneous Paid-In Capital Account" should have been carried under Account 117, "Utility Plant Adjustments," of the Uniform System of Accounts for Water Utilities prescribed by the Commission in its General Order 183. "[U]nder the circumstances," the Commission decided, it had "no alternative except to conclude that the construction cost of the water and sewer facilities acquired by Respondent, for the purpose of this rate case, plus additions and less depreciation and retirements, should not be accepted

as the original cost less depreciation of the water and sewer facilities of Respondent."

In finding fair value, which it did not do in its first rate-fixing order of November 22, 1965, the Commission accepted appellant's submission that the "total utility plant * * * in service as of December 31, 1965, was $644,844.30, that the accumulated provisions for depreciation were $148,473.06 making a net utility plant as of December 31, 1965, of $496,371.24." The Commission concluded, however, that the last amount "was the depreciated *construction cost* of the utility plant * * * and that to determine the original cost of said utility plant, for the purpose of this rate case, there should be deducted therefrom the amount of $281,223.41, making an original cost less depreciation of $215,147.83 as of December 31, 1965."

Thus the Commission treated the utility's original cost as the amount it paid for the utility plant, plus its subsequent construction costs for permanent improvements, less depreciation. In doing so, the Commission distinguished original cost from construction cost, admitting that it had incorrectly denominated construction cost as original cost in its first order.

After observing that appellant had introduced no evidence as to reproduction cost new, and considering that factor relevant in determining fair value, the Commission found that "for the purpose of this rate case, reproduction cost new is * * * not less than the construction cost * * *." It then found that the "fair value for rate making purposes, as of December 31, 1965, of the water and sewer facilities of Preston Utilities Corporation is not more than $288,000." It further found that the rates proposed in its first order of November 22, 1965, would produce "approximately 6% on the fair value of the Company's water and sewer facilities."

Appellant's primary contention is that "[t]he Commission erred in deducting that amount of $281,223.41

from original construction cost to determine original cost for rate making purposes where there was no evidence to show such a figure was Contributions in Aid of Construction or any other item which could be properly deducted from original cost for the purpose of finding fair value." It argues that the "Commission expressly disregards the meaning of 'original cost' and substitutes for it either a concept of valuation based upon purchase price which has no support or justification in the law, or a finding of original cost having no substantial support in the evidence."

The appellant thus treats cost of construction as the inevitable equivalent of original cost for rate-making purposes. Our recent decision in *Killarney Water Co.* v. *Commerce Com.,* 37 Ill.2d 345, however, makes it clear that only that portion of the cost of construction which was actually paid by the first person to devote utility properties to the public service is to be included in a utility's original cost for rate-making purposes. There we held that the Commission properly excluded from the rate base that part of the construction cost that had been paid by consumers who purchased homes in the area served by the utility.

The appellant emphasizes that the Commission did not find that there had been such contributions in aid of construction in this case. But the Commission did find that appellant's evidence of original cost, consisting primarily of bills from contractors and copies of checks sent in payment, proved only the amount that had been spent in constructing the original water and sewer facilities, and did not prove whose money it was that had been so spent. With the exception of its first rate-making order, which it subsequently corrected, since 1955 the Commission has consistently distinguished between construction cost, in the sense of the amount expended in the construction of the facilities, on the one hand, and original cost for rate-making purposes on the other. And the express reservations that nothing in its orders "should be construed as evidence or a

finding of the original cost or fair value * * * in any rate proceeding" clearly indicate that distinction.

The burden of establishing original cost was upon the utility, not upon the Commission. The Public Utilities Act expressly provides that "[i]n all proceedings before the Commission, * * * in which the value of the property of any public utility or utilities is an issue, the burden of establishing such value shall be upon such public utility or utilities." (Ill. Rev. Stat. 1967, chap. 111⅔, par. 30.) That burden was not met by the testimony of an officer of the appellant that an officer of Preston Management Co. had explained that company's willingness to sell the utility plant for less than one fourth of its depreciated construction cost on the ground that additional sewage disposal facilities would probably be required, and the further ground that Preston Management Co. desired to confine its operations to the San Francisco area.

The Commission is not, as the appellant argues, "urging some new standard of rate-making for this State." Nor does it appear that the Commission has improperly assumed "that contributions in aid of construction exist simply because Preston is a water or sewer utility." In rejecting the appellant's attack upon the Commission's order, we hold only that appellant failed in this proceeding to meet its burden of demonstrating the amount that was actually spent by the first company to devote the utility plant to the service of the public. It is therefore unnecessary to reach the broader issues that the appellant has sought to raise.

We find that the appellant's remaining objections that the Commission committed reversible error (1) by failing to file pleadings and to give appellant notice as to what issues would be raised and (2) by allowing its special consultant to act "as an attorney representing the Commission, cross-examining witnesses and objecting to testimony and evidence, and as an expert witness" are without merit. Appellant initiated this proceeding and was aware of the issues

that would be raised. Section 60 of the Public Utilities Act expressly provides that "[i]n the conduct of any investigation, inquiry or hearing neither the Commission nor any commissioner, assistant commissioner or officer of the Commission shall be bound by the technical rules of evidence, and no informality in any proceeding or in the manner of taking testimony before the Commission, any commissioner, assistant commissioner or an officer of the Commission shall invalidate any order, decision, rule or regulation made, approved, or confirmed by the Commission." Ill. Rev. Stat. 1967, chap. 111⅔, par. 64.

The judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*