(No. 43173.—

CITIZENS UTILITIES COMPANY OF ILLINOIS, Appellant v. ILLINOIS COMMERCE COMMISSION, Appellee.

*Opinion filed September 30, 1971.—Rehearing denied Nov. 24, 1971.*

CHAPMAN and CUTLER, of Chicago, (JOHN N. VANDER VRIES, and DANIEL J. KUCERA, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Chicago, (PETER A. FASSEAS and THOMAS CASSIDY, Assistant Attorneys General, of counsel,) for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from the order of the circuit court of Will County confirming the order of the Illinois Commerce Commission, which directed Citizens Utilities Company of Illinois (Citizens-Illinois) to reduce its outstanding capital stock by the sum of $7,061,500.

Initially, the Commission issued an order (Docket No. 49283), approving a merger of some 14 independent public utilities. These utilities provided water and sanitary sewer service for various subdivisions in the suburban Chicago area. The surviving entity from the merger was Citizens—Illinois, a wholly owned subsidiary of Citizens Utilities Company, a Delaware corporation (Citizens— Delaware.) In the merger application, Citizens—Illinois, among other things, represented that it was obligated to Citizens—Delaware in the amount of $5,212,000 for advances expended for the construction of plant facilities. Accordingly, the Commission, in its order, provided for the issuance of 52,120 shares, $100 par value, of the capital stock of Citizens—Illinois to Citizens—Delaware as reimbursement for the $5,212,000 expended by the latter for construction. It also approved the issuance by Citizens-Illinois of 32,932 shares in substitution for the outstanding shares of the merged, constituent corporations, in addition to the 8750 shares of Citizens—Illinois, which were already outstanding. All of the stock of the various constituents had been owned by Citizens— Delaware.

Subsequently, Citizens—Illinois applied for a rate increase in Docket No.50909. In the course of this proceeding, the Commission was apprised of facts leading it to conclude that Citizens—Delaware had not, in fact, expended $5,212,000 for construction as represented to it in Docket No.49283 proceeding.

The Commission then issued a citation order directing Citizens—Illinois to appear and show cause why the order

previously entered in Docket No.49283 should not be set aside and amended. After several hearings, the Commission amended its previous order, directing the reduction in the capital stock, which led to this appeal.

The various component utility companies originated under similar schemes. In most instances, the plants were constructed under an agreement between Citizens—Illinois, or a predecessor, and the developer of the particular subdivision. The developer owned the utility stock. The construction costs were billed to Citizens—Illinois, or a predecessor, or were paid directly by the developer. If the developer paid the costs, they were entered as advances on behalf of the utility, and the developer held an account receivable from the utility.

Citizens—Delaware then purchased all of the stock of the utilities from the developers, plus all of the developers' receivables from these various utilities. The purchase price for these stocks and receivables was substantially less than the construction costs they purported to represent. At the first blush, it would appear that the developers paid out construction costs substantially greater than the reimbursement received for the utility plants from Citizens—Delaware by the purchase of stock and receivables. The developers, however, had expensed these costs to land development costs, and recovered, at least a part thereof, on the sale of lots.

The basic conflict is whether Citizens—Illinois is entitled to issue capital stock to its parent, and carry as the cost of its utility plant, the face amount of the construction costs as reflected by the invoices and advances therefor, or the actual amounts paid out for such construction, either directly, or by purchase from the developer of his advances in the form of receivables. The Commission urges that the significance of reflecting the actual amounts paid out for construction costs is in its relation to the future rate structure. We agree. See: *Du Page Utility Co. v. Commerce Com., 47 Ill.2d 550, 553,*

*554; Killarney Water Co. v. Commerce Com., 37 Ill.2d 345, 351.*

We have held that only that portion of the cost of construction which was actually paid by the first person to devote utility properties to the public service is to be included in a utility's original cost for rate-making purposes. *(Du Page Utility Co. v. Commerce Com., 47 Ill.2d 550, 554; Preston Utilities Corp. v. Commerce Com., 39 Ill.2d 457, 462.)* Here, Citizens—Illinois, or one of its components through the merger, was clearly the first person to devote the utility properties to public use. In the instances where the subdivision developers paid the construction costs of the water and sewer lines, the costs were entered as advances on behalf of the utility companies. It is these same advances for which the stock in question was issued, and this stock purportedly represents the original cost of these utility lines. It is important that this stock accurately reflect the actual cost of the facilities to the utility. While this proceeding, wherein a reduction in capital stock is ordered, does not directly involve rates, it may well have a bearing upon them.

The issuance of stock by a public utility is subject to the control of the Commission by virtue of section 21 of the Public Utilities Act (Ill.Rev.Stat. 1969, ch. 111 2/3, par. 21), which provides, in part, that stock may be issued for the following purposes and no other: "For the acquisition of property, or for the construction, extension or improvement of or addition to its facilities, or for the discharge or lawful refunding of its obligations; *or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility* \*\*\* for any of the above purposes except maintenance of service, replacements and substitutions \*\*\*." (Emphasis added.)

Citizens—Illinois contends that the advances by the developers on behalf of the utilities are equivalent to moneys actually expended from the treasury of the utility,

and that under the italicized portion of the statute, the stock issue was properly authorized. Two accountants testified on behalf of Citizens—Illinois substantially to the effect that advances by a stockholder—developer on behalf of the utilities were equivalent to funds from their "treasury," as were issuances of stock of the utilities for construction costs paid by the developer. They concluded that the issuance of the stock to Citizens—Delaware was thus for reimbursement of moneys expended from the utilities' treasuries.

Be this as it may, the Commission is not required to gloss over the machinations of the utility and accept the witness's recitation of the conventional accounting definition of "advances" as determinative of the issue. It must analyze what was done by examining the entire transaction within the framework of the normal public utility regulation concepts. The method of construction and development of the utility facilities in this case is similar to those used by the utilities in *DuPage Utility Co. v. Commerce Com., 47 Ill.2d 550; Preston Utilities Corp. v. Commerce Com., 39 Ill.2d 457* and *Killarney Water Co. v. Commerce Com., 37 Ill.2d 345.* It would be naive to suppose that the developers anticipated recovering from the utilities their full costs of plant construction. These costs were figured in the sales price of their lots and had been expensed as land development costs. The testimony of the various witnesses before the Commission supports this conclusion.

Citizens—Illinois points out in its brief that there is great merit in this procedure. However, under these circumstances, we believe that it would have been erroneous for the Commission to have equated the face amount of the advances made by the developers and the expenditures made by them, which had been expensed and for which they received stock, to moneys expended from the treasury of the utility for construction.

Thus, the face amount of the advances was $5,212,000, but only $3,858,268 was expended by Citizens—Delaware and Citizens—Illinois. The balance

sheet of Citizens—Illinois reflected a total net property and plant account of $10,919,770, while only the sum of $3,858,268 was paid out for this purpose by it and Citizens—Delaware. The net result was that the books of Citizens—Illinois reflected a property and plant cost of $7,061,502 greater than actually paid out by it and Citizens—Delaware. The commission was correct in ordering that the difference between property and plant cost ($10,919,770) as reflected on the books of Citizens—Illinois and the amount actually invested by devoting it to public use ($3,858,268) be credited to an acquisition adjustment account and debited from the capital stock account.

Citizens—Illinois contends that the Commission failed to make the necessary findings based upon the evidence. However, the Commission need not make a finding on each issue or evidentiary fact. *(United Cities Gas Co. v. Commerce Com., 47 Ill.2d 498, 501; Chicago Junction Ry. Co. v. Commerce Com., 412 Ill. 579, 583, 584.)* The findings made by the Commission were on the facts essential to its determination and they should not be set aside unless they are clearly unreasonable, arbitrary, or contravene some established rule of law. *(Chicago North Shore and Milwaukee R.R. Co. v. Commerce Com., 354 Ill. 58, 74;* Ill.Rev.Stat. 1969, ch. 111-2/3, par. 72.) Such is not the fact in the case at bar.

Citizens—Illinois also contends that the Commission had no authority to issue its citation order commanding Citizens—Illinois to show cause why the order should not be vacated. It also complains that this improperly placed the burden of proof on it. In its initial order in Docket No. 49283, the Commission authorized the issuance of stock on the representation made to it that the issuance was for the reimbursement of moneys actually expended from the treasuries of the utilities for construction purposes. It was not until the subsequent rate increase proceeding that the Commission learned of the actual relationship of the parties and the actual amount of the funds expended. The

Commission has the power to amend any order it has made. *(Public Utilities Com. ex rel. Wabash R.R. Co. v. Illinois Central R.R. Co., 274 Ill. 36, 41;* Ill.Rev.Stat. 1969, ch. 111-2/3 par. 71.) It was the burden of Citizens—Illinois to justify the stock issuance it sought and to support the representations made by it upon which the earlier, erroneous order had been entered.

We find the order of the Commission was proper and amply supported by the evidence, and the judgment of the circuit court is affirmed.　　　*Judgment affirmed.*